IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| DEAN A. POYNTER, and LOIS M. POYNTER, | ) ) ) | |
| Plaintiffs, | ) ) | CASE NO.: 3:13-cv-00773-JGH |
| v. | ) ) | |
| OCWEN LOAN SERVICING, LLC., *et al*., | ) ) | |
| Defendants. | ) | |

---

## OCWEN LOAN SERVICING, LLC'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

---

Christopher M. Hill
Christopher M. Hill & Associates
641 Teton Trail
Frankfort, KY 40601
Telephone:    (502) 226-6100
Facsimile:    (502) 223-0700
chrish@hillslaw.com

Edmund S. Sauer
BRADLEY ARANT BOULT CUMMINGS LLP
Roundabout Plaza
1600 Division Street, Suite 700
Nashville, TN 37203
Telephone: (615) 244-2582
Facsimile: (615) 252-6380
esauer@babc.com

*Attorneys for Defendants*

Defendant Ocwen Loan Servicing, LLC ("Ocwen") respectfully submits the following opposition to Plaintiffs' Motion for Class Certification. (Doc. 58).

## **INTRODUCTION**

There are many remarkable things about the Poynters' theory of class certification, chief among them being the fact that they have failed to adduce any evidence as to what did or did not happen to anyone other than themselves. *See Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537 (6th Cir. 2012) (certification cannot be premised on the "presum[ption] that the plaintiffs' allegations in the complaint are true"); *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996) (class certification "should be predicated on evidence").

But that pales in comparison to the patently false premise upon which their entire motion for class certification rests—namely, that Ocwen supposedly "admitted" in a prior brief in this case (specifically, Doc. 13) that it had a "policy and procedure" of always requiring borrowers to sign a "third party authorization form" before Ocwen would communicate with their counsel. (Doc. 58-1 at 11-12). To conjure up that mirage, the Poynters employ repeated ellipses to hide what Ocwen's counsel *actually* said, which was this:

> Moreover, the allegation that the particular facts underlying the Poynters' case amounts to a "standardized policy and/or procedure" employed by Ocwen **is wholly unwarranted**. As discussed, *supra,* the Poynters' account has a history with respect to origination, servicing, transfer of interest, modification, and legal proceedings. **Simply stated, this matter stands as an exception to the norm, as opposed to a routine account**. Further, the supposition that the facts here demonstrate a "standardized policy and/or procedure" **is unsupported by any written evidence of same**. The fact that Ocwen has a "standardized form" for third-party authorization merely acknowledges its compliance with the directives of 15 U.S.C. § 1692c. **As such, Ocwen objects to this FDCPA claim in its entirety, either standing alone or as a class action**. This count will not survive a motion to dismiss and the proposed amendment is therefore futile.

(Doc. 13 at 3-5) (emphasis added).

The Poynters' contention that any of that constitutes an admission of a uniform common

1

"policy or procedure" of directly contacting borrowers known to be represented by counsel is not only patently false, but a deliberate mischaracterization of what was actually said. Likewise, when Ocwen pointed out in that brief that the existence of the "third party authorization form" merely evidenced its compliance with 15 U.S.C. § 1692c, the part of § 1692c it was referring to was not 1692c's provision restricting contacts with represented borrowers, but its provision about communicating with other third parties:

> **(b) Communication with third parties**
>
> Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

15 U.S.C. §1692c(b). The "third party authorization" form Ocwen was referencing (*see* Doc. 26-4), *does not even mention* attorneys but instead describes other third parties such as real estate agents. The existence of such a form is clearly consistent with subsection (b) of §1692c, and it is appropriate to have such a form to facilitate and document compliance with that subsection before communicating with those types of third parties. The suggestion that Ocwen's prior brief admitted anything other than this is again simply false. And, as explained herein, the fact that the form may have been borrowed for an *ad hoc* use in the unusual circumstances of the Poynters' case is not evidence that it was used routinely (or ever) with respect to other represented borrowers.

Yet, the Poynters' motion for class certification is premised on the false claim that Ocwen's prior brief admitted a uniform policy and procedure of requiring all represented borrowers to sign the third party authorization form before Ocwen would communicate with their counsel. And although the Poynters engaged in "massive discovery efforts" (Doc. 58-1 at 28), they have offered

***no evidence at all*** to support their claim that such a policy and practice existed beyond their misleading portrayal of Ocwen's prior brief. There is, then, nothing before the Court to demonstrate that Ocwen actually had any such policy or practice, or that the Poynters' own claim has anything in common with anyone else's claim.

Without evidence demonstrating that Ocwen employed any such uniform policy or practice, there is simply no basis in the record upon which the Court could properly certify *any* class, let alone the one proposed by the Poynters. By requesting class certification on such a deficient record, the Poynters invite the Court to commit reversible error. *See Am. Med. Sys*., 75 F.3d at 1086 (a class cannot be certified "if the existing record is inadequate for resolving the relevant issues"); *Gooch v. Life Invs. Ins. Co. of Am.*, 672 F.3d 402, 417 (6th Cir. 2012) ("A 'limited factual inquiry' assuming plaintiff's allegations to be true does not constitute the required 'rigorous analysis' we have repeatedly emphasized" is necessary under Rule 23).

For these and the other reasons set forth below, certification of the Poynters' unascertainable and unmanageable class, sought without a shred of evidence demonstrating Rule 23's requirements are satisfied, should be denied.

## RELEVANT FACTS

### I.    THE POYNTERS TAKE OUT A LOAN.

In July 2004, the Poynters took out a note and mortgage (the "loan") to finance their home. (Doc. 26-7). The loan obligated them to repay $89,000 over 30 years through set monthly payments. *Id.* The loan was originated by Argent Mortgage Company, and was subsequently bought by co-defendant Wells Fargo Bank, N.A., as trustee under a pooling and servicing agreement ("Wells Fargo"). (Doc. 26, ¶ 25).

## II. WELLS FARGO BRINGS A FORECLOSURE ACTION AGAINST THE POYNTERS, WHICH ENDS IN A SETTLEMENT AGREEMENT AND LOAN MODIFICATION.

By 2008, the Poynters had defaulted, so Wells Fargo filed a foreclosure action. Declaration of Edmund S. Sauer ("Sauer Decl."), filed contemporaneously herewith, at Ex. A (complaint for foreclosure). During the foreclosure proceeding, Wells Fargo retained Ocwen to service the Poynters' mortgage, effective August 31, 2010. (Doc. 26, ¶ 31; *see also* Doc. 26-1).

In November 2011, Wells Fargo and Ocwen reached an amicable settlement of the foreclosure proceedings with the Poynters, who were represented in the foreclosure action by Teddy Gordon (who is also their counsel here). (Docs. 23, 23-1). Under the settlement, the Poynters were extended an in-house, proprietary loan modification that cured their default, declared their loan current, and allowed them to stay in their home. (Sauer Decl. at Ex. B (loan modification); *see also* Doc. 56-1 at ¶¶ 3-7). The loan modification also reduced the Poynters' interest rate and required monthly payments going forward. (*Compare* Sauer Decl. at Ex. B *with* Doc. 26-7).

Under the loan modification, the Poynters expressly agreed that any subsequent notices should be sent by Ocwen directly to the Poynters themselves, at their home address. (*Compare* Sauer Decl. at Ex. B, ¶ 19 *with* Doc. 26 at ¶ 20). The Poynters further agreed that this and the other terms of the loan modification could "not be supplemented, changed, waived, discharged, eliminated, modified or omitted except by written document executed by both [the Poynters] and Ocwen" (Sauer Decl. at Ex. B, ¶ 11), and would "bind the parties' respective . . . assigns . . . and personal representatives." (*Id.* at Ex. B, ¶ 14). The loan modification bears the Poynters' signatures, which were notarized and attested to by Mr. Gordon himself. (*Id.* at Ex. B, pp. 9-10; *see also* Sauer Decl. at Ex. C (Deposition of Lois Poynter, dated Apr. 28, 2015 ("L. Poynter Dep."),

at 14:24-15:18)).

## III. FOLLOWING THE SETTLEMENT, OCWEN CONTINUES TO SERVICE THE POYNTERS' LOAN.

For more than a year, the Poynters made the monthly payments required under the loan modification. However, they did not make those payments themselves. They instead arranged to have Mr. Gordon make those payments for them. (Doc. 26 at ¶¶ 35-37).[1] In April 2012, and then again during January 2013 and February 2013, Mr. Gordon began requesting that Ocwen "direct all future correspondence to him," not the Poynters. (Doc. 26, ¶ 90; *see also* Doc. 26-2). Ocwen wrote the Poynters on March 13, 2013, requesting that they provide Ocwen with written authorization to correspond directly with Mr. Gordon. (Doc. 26 at ¶ 91; *see also* Doc. 26-3). Ocwen's request was consistent with the loan modification's express written requirements, under which the Poynters and Mr. Gordon had agreed that Ocwen should send notices directly to the Poynters unless and until the Poynters themselves otherwise agreed in writing. (Sauer Decl. at Ex. B, ¶¶ 11, 19).

Following the loan modification, the Poynters never submitted any written document authorizing Ocwen to communicate with Mr. Gordon instead of them. (Sauer Decl. at Ex. C (L. Poynter Dep. at 32:16 –33:14 (testifying she did not remember whether she and her husband ever sent anything "authorizing Ocwen to talk to Mr. Gordon")). As a result, Ocwen continued to provide various notices concerning the mortgage—including monthly account statements and eventually delinquency notices—to the Poynters at their home address. (*See, e.g*., Doc. 58-6 to 58-26).

---

[1] *See also* Sauer Decl. at Ex. C (L. Poynter Dep. at 28:13 – 28:15 (testifying that payments to Ocwen were made by Mr. Gordon)); *Id.* at 22:19 – 22:23 (testifying that "there's a lot of illness at my house, and I have other things to think about besides this, and we were letting Mr. Godon take care of all this for us"); Sauer Decl. at Ex. D ((Deposition of Dean Poynter, dated Apr. 28, 2015 ("D. Poynter Dep."), at 11:19 – 11:24) (testifying that any questions about their loan need to be addressed to his wife, "because she does all the business now.")).

## IV. RATHER THAN PROVIDE OCWEN WITH SUCH AUTHORIZATION, THE POYNTERS FILED THIS ACTION.

On July 1, 2013, the Poynters and Mr. Gordon filed this action against Ocwen in state court. (Doc. 1-2, ¶¶ 12-14). Ocwen removed the case on August 6, 2013. (Doc. 1). Thereafter, Judge Heyburn set a deadline of October 31, 2014 for the joinder of parties and amendment of the complaint, and a deadline of April 30, 2015 for the parties to complete discovery. (Doc. 9 at 2-3).

The Poynters moved for leave to amend their complaint on the amendment deadline of October 31, 2014. (Doc. 10). Therein, they first added a claim for the certification of a nationwide class against Ocwen for claimed violations of § 1692c(a)(2) of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* ("FDCPA"). The Poynters, however, did not ask for an extension of the discovery period, which closed some six months later on April 30, 2015. (Doc. 9 at 2-3). After the Court granted the Poynters' motion to amend (Doc. 25), Ocwen moved to dismiss the Poynters' amended complaint based on, among other grounds, the Poynters' lack of statutory standing to pursue claims under the FDCPA. (Doc. 44). Briefing with respect to Ocwen's motion closed on November 2, 2015, and the motion to dismiss remains pending before the Court. (Doc. 54).

Rather than await the Court's ruling on Ocwen's motion, the Poynters and Mr. Gordon elected to move for class certification of their FDCPA claim on December 1, 2015. (Doc. 58). Therein, they request that the Court certify their § 1692c(a)(2) claim on behalf of the following class, whose definition is so complex that it incorporates two footnotes:

All persons[1] who, like the Poynters, were contacted directly by and/or were required to provide authorization to communicate directly with their attorney(s) to the Defendant Ocwen Loan Servicing, LLC, a debt collector as defined by the FDCPA[2], despite the fact that OCWEN knew that the consumer was represented by an attorney(s) with regard to the subject debt and further OCWEN had knowledge of, or could readily ascertain, such attorney(s)' name(s) and address(es), and the attorney(s) did not fail to respond within a reasonable period of time to the communication from OCWEN per its stated policy, within the applicable statutory limitations period, including the period following the filing date of this action.

[1]     The term persons as used in this class definition includes only those individuals who satisfy the definition of "consumer" as defined by the Fair Debt Collection Practices Act § 803(3), 15 U.S.C. § 1692a(3) (1994).

[2]     Since Ocwen Loan Servicing, LLC would only be a "debt collector" for those debts that it "either acquired [] in default or has treated [] as if [they] were in default at the time of acquisition", the class is necessarily limited to consumers who would satisfy those definitions. Bridge v. Ocwen Fed. Bank, F.S.B., 681 F.3d 355, 362 (6th Cir. 2012).

(Doc. 58 at 1-2; *see also* Doc. 58-1 at 7).

## LEGAL STANDARD

"Class certification is governed by Federal Rule of Civil Procedure 23." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2548 (2011). Under Rule 23, the Poynters "ha[ve] the burden to prove [its] certification requirements" of "numerosity, commonality, typicality, and adequate representation," *Young*, 693 F.3d at 537, as well as the burden to demonstrate that "questions of law or fact common to class members" predominate over individualized ones and that use of the class device "is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). The failure to demonstrate *any one* of these requirements "dooms the class." *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 946 (6th Cir. 2011).

These are burdens of proof. "Rule 23 does not set forth a mere pleading standard." *Gooch*, 672 F.3d at 417. A plaintiff "must affirmatively demonstrate his compliance with the Rule," *Young*, 693 F.3d at 537, which often requires "more information than the pleadings will provide."

*Am. Med. Sys.*, 75 F.3d at 1079.  As a result, a plaintiff must "satisfy through evidentiary proof" that each of Rule 23's requirements are met.  *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013); *see also Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2412 (2014); *Wal-Mart*, 131 S. Ct. at 2551.

"Given the huge amount of judicial resources expended by class actions, particular care in their issuance is required."  *Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*, 654 F.3d 618, 630 (6th Cir. 2011).  Therefore, a court must conduct a "rigorous analysis" of the record and the parties' submissions to "ensure[] that each of the prerequisites for certification have actually been satisfied."  *Id*. at 629.  Such an analysis demands that a court "probe behind the pleadings," and "touch[] aspects of the merits," *Davis v. Cintas Corp*., 717 F.3d 476, 484 (6th Cir. 2013), in order to "formulate some prediction as to how specific issues will play out" at trial, including whether they can be resolved through common—as opposed to individualized—evidence.  *In re New Motor Vehicles Canadian Export Antitrust Litig*., 522 F.3d 6, 26 (1st Cir. 2008); *accord Pipefitters Local*, 654 F.3d at 629-30; *Blades v. Monsanto Co*., 400 F.3d 562, 572 (8th Cir. 2005) (to be certifiable, "classwide injury [must be subject to] proof common to the class").  In performing this task, "[t]ough questions must be faced and squarely decided"[2] on those issues "relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."  *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013).

## ARGUMENT

## I.  THE POYNTERS' CLAIM IS WHOLLY UNIQUE, TYPICAL OF NO ONE ELSE'S CLAIM.

Rule 23(a)(3) limits class certification to cases in which "the claims or defenses of the

---

[2] *West v. Prudential Sec., Inc*., 282 F.3d 935, 938 (7th Cir. 2002).

representative parties are typical of the claims or defenses of the class." A plaintiff's claim is typical only if it "arises from or is directly related to a wrong to a class, and that wrong includes the wrong to the plaintiff." *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 572 (6th Cir. 2004). "[A] sufficient relationship [must] exist[] between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000). Typicality ensures that "as goes the claim of the named plaintiff, so go the claims of the class." *Id.*

**A.** **The unique facts surrounding the Poynters' claim, coupled with the absence of any proof of a common policy and procedure with respect to the proposed class, negates typicality.**

The Poynters' proposed class definition is not limited to any one specific kind of contact by Ocwen with a represented borrower, is not limited to any one factual scenario, and is not limited to any one reason behind why Ocwen may have contacted a represented borrower at all. Instead, the proposed class definition encompasses any direct contacts Ocwen may have made with persons it "knew" to be represented by counsel. (Doc. 58 at 1). The definition is certainly not limited to represented borrowers sent the same "third party authorization" that Ocwen sent the Poynters. Nor is the definition in any way limited to the factual or legal basis of why such a form may have been sent by Ocwen directly to a borrower. The end result is that the Poynters' proposed class does not come close to meeting Rule 23(a)'s typicality requirement. *See, e.g.*, *Smith v. Lyons, Doughty & Veldhuius, PC*, No. 07-cv-5139, 2008 WL 2885887, at *5 (D.N.J. July 23, 2008) (concluding that because § 1692c(a)(2) requires a number of inherently individualized inquiries concerning each class member's own circumstances, "[i]t is highly improbable that these issues can be resolved using class-wide proof …, which precludes class treatment").

The Poynters' belief that Ocwen employed "a standardized policy and/or procedure that is

a *per se* violation of" § 1692c(a)(2) comes nowhere close to fulling their Rule 23 burden. (Doc. 26 at ¶ 94; *see also* Doc. 58-1 at 20). The Sixth Circuit has made clear that "allegations of a 'general policy' . . . are inadequate to establish entitlement to class certification." *Romberio v. Unumprovident Corp.*, 385 F. App'x 423, 429 (6th Cir. 2009). A plaintiff instead must offer "significant proof" that such a policy existed. *Reeb v. Ohio Dep't of Rehab. and Corr.*, 435 F.3d 639, 644 (6th Cir. 2006).

Moreover, even where (unlike here) a common policy or practice is proven to exist, that "does not mean . . . a class action is necessarily appropriate." *Romberio*, 385 F. App'x at 430. Certification is proper only where the policy or practice is shown to have produced a uniform injury upon the class as a whole. *Id.* There is a substantial difference between a case "challeng[ing] a very specific practice uniformly applied to a discrete, easily-defined group of individuals," thereby uniformly causing a common injury, and one "challeng[ing] a group of loosely-defined practices that were *not* applied uniformly to a discrete, easily-defined class of individuals," where injury can only be shown through additional individualized evidence. *Id*. at 430-31. The former will satisfy Rule 23(a)'s typicality requirement, but the latter will not. "That all of the plaintiffs may have subjected to some or all of [a defendant's] alleged wrongful practices does not eliminate the need for an individualized assessment as to [whether those practices caused a uniform injury] affecting each and every class member." *Id.* at 432. If the common policy or practice causes a variety of harms, or harms to some but not to all, then typicality does not exist. *Id.* In such cases, the "common question" of whether a policy or practice existed "is not sufficient to allow a court to find commonality and typicality" satisfied, *Reeb*, 435 F.3d at 645, because "[t]here must be some connection . . . between the merits of each individual claim and the conduct affecting the class." *Romberio*, 385 F. App'x at 431. "Absent such a connection, there is no basis

upon which to fashion class-wide relief. Where a class definition encompasses many individuals who have no claim at all to the relief requested, or where there are defenses unique to the individual claims of the class members, the typicality premise is lacking, for—under those circumstances—it cannot be said that a class member who proves his own claim would necessarily prove the claims of other class members." *Id.*

Here, of course, the Poynters offer no evidence that Ocwen had a uniform practice of directly contacting borrowers it knew to be represented by counsel. They also offer no evidence to show that there is any other borrower who is similarly situated to them, having been contacted directly by Ocwen despite being represented by counsel because the borrower and her counsel consented in advance to such direct contact through a prior written agreement *with Ocwen itself*. They seem to simply presume that any direct communication with a borrower Ocwen knew was represented by counsel violates § 1692c(a)(2). But "to bridge th[e] gap" between the necessity of showing a common practice existed and that the practice produced a common injury through its application, a plaintiff "must prove much more than the validity of his own claim." *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 158-59 (1982).

This the Poynters have also failed to do. Their proposed class includes persons who received different kinds of communications from Ocwen. (Doc. 58 at 1-2). The proposed class also includes persons who were directly contacted with the borrowers' and/or their counsel's consent, persons who were directly sent only documents mandated by state foreclosure law, persons who indicated they were represented by an attorney but still requested that certain documents or information be provided to them, and so on. As explained in Section IV.C *infra*, such direct communications do not run afoul of § 1692c(a)(2). Therefore there is nothing in the record to "bridge th[e] gap" between the Poynters' mere allegation that Ocwen employed a policy

and practice of directly contacting represented borrowers with proof that such a policy and practice caused some common injury to the proposed class.

Under these circumstances, typicality is not present. The Poynters will not prove the claim of any other class member through litigating their own claim. Rather, Ocwen's potential liability to anyone else would have to be resolved through additional, individualized evidence regarding that borrower, the servicing history of her loan, and the context and content of the communications she received. Certification of the proposed class would amount to reversible error. *See Romberio*, 385 F. App'x at 429-32; *Stout*, 228 F.3d at 717; *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397-99 (6th Cir. 1998); *Am. Med. Sys.*, 75 F.3d at 1082. The Court cannot allow Rule 23 to be applied in a way that ignores the individual facts peculiar to each class member because Rule 23 "must be interpreted in keeping with Article III constraints, and with the Rules Enabling Act, which instructs that rules of procedure 'shall not abridge, enlarge or modify any substantive right.'" *Amchem Prods. v. Windsor,* 521 U.S. 591, 613 (1997); *accord Ortiz v Fibreboard Corp.*, 527 U.S. 815, 845 (1999) (same).

**B.    The defenses uniquely applicable to the Poynters' claim also negate typicality.**

To ensure typicality is met, a court must also evaluate whether the named plaintiff may be subject to unique problems of proof or defenses to her claims, including the potential merit of such defenses. *See Young*, 693 F.3d at 537 ("A class representative must be part of the class and possess the same interest and suffer the same injury as the class members."); *Beck v. Maximus, Inc.*, 457 F.3d 291, 300 (3d Cir. 2006) (before certifying a class, a court must consider the "likelihood a unique defense [to the named plaintiff's claim] will play a significant role at trial"). The failure to perform such an inquiry constitutes reversible error. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984-85 (9th Cir. 2011); *Sprague*, 133 F.3d at 399.

While a district court must consider such merits-related issues, it should not conclusively resolve them. Instead, if the plaintiff may be subject to potentially meritorious and individualized defenses, the Sixth Circuit has explained that a district court should deny class certification, or at least defer a ruling on that issue, until those defenses are first resolved. *See, e.g.*, *Thompson v. Cnty. Of Medina*, 29 F.3d 238, 241 (6th Cir. 1994); *Marx v. Centran Corp.*, 747 F.2d 1536, 1552 (6th Cir. 1984); *Gwirtz v. Ohio Educ. Ass'n*, 887 F.2d 678, 683 (6th Cir. 1989).

Here, the Poynters lack the typicality necessary to represent the proposed class because they have no standing to assert an FDCPA claim themselves. To have statutory standing, the Poynters must demonstrate that Ocwen is a "debt collector" *as to them* within the meaning of the FDCPA. *Estep v. Manley Deas Kochalski, LLC*, 552 F. App'x 502, 505 (6th Cir. 2014). But as Ocwen has explained in its pending motion to dismiss, it cannot be labeled a "debt collector" under the FDCPA *with respect to the Poynters* because it extended a loan modification to them in November 2011 to cure their past default. (Doc. 44-1 at 4-7; Doc. 54 at 2-5). Not only is this a potentially meritorious defense, it is also a threshold issue that must be resolved before deciding whether class certification is appropriate. *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998). For this reason alone, the Court should deny class certification or defer a ruling regarding it until it first resolves Ocwen's pending motion to dismiss. *Thompson*, 29 F.3d at 241; *Marx*, 747 F.2d at 1552; *Gwirtz*, 887 F.2d at 683.

Second, the terms of the Poynters' loan modification preclude their own § 1692c(a)(2) claim. Under § 1692c(a)(2), a debt collector is prohibited from "communicat[ing] with a consumer in connection with the collection of any debt ... if the debt collector knows the consumer is represented by an attorney" *unless the consumer **or** her attorney consent to direct communication*. Here, both the Poynters and their attorney Teddy Gordon consented in advance to Ocwen

communicating directly with the Poynters regarding their loan through the terms of the November 2011 loan modification.  (Sauer Decl. at Ex. B, ¶ 19).  They also agreed in advance that only the Poynters could change that directive, and could only do so only through written notice to Ocwen. (*Id.* at Ex. B, ¶ 11).  Because the Poynters never provided Ocwen with the requested written authorization form (or with any other form of written notice directing notices be sent to Mr. Gordon alone), the Poynters cannot state a viable § 1692c(a)(2) claim.  They cannot do so because Ocwen was contractually bound by the terms of the Poynters' loan modification to provide notices only to them, and no one else, until the Poynters agreed in writing for notices to be sent elsewhere.

The case of *Backlund v. Messerli & Kramer, P.A.*, 964 F. Supp. 2d 1010 (D. Minn. 2013), is instructive.  There, as here, the borrower and his former counsel entered into a written agreement that directed Capital One and its collection attorneys to provide notices to the borrower "at [his] last known address."  964 F. Supp. 2d at 1012.  There, as here, the agreement also provided that its terms could not "be altered or amended in any of its provisions except by the mutual written agreement of the Parties that is signed by both parties."  *Id.*  Subsequently, the borrower retained new counsel and *orally* informed Capital One's attorneys of that new representation.  *Id.* at 1012-13.  The borrower then defaulted on payment, and notices of his default were sent directly to him at his home address.  *Id.* at 1013.

He sued, claiming the notices violated § 1692c(a)(2) because they were sent directly to him and not to his attorney.  964 F. Supp. 2d at 1012-13.  But the court dismissed his claim, finding that he had "consented to receive default notices [through] the stipulation agreement," and had also agreed "that [such] consent could not be altered except in writing."  *Id.* at 1017.  Having made no effort to comply with the agreement's requirements for changing the person to whom notices should be sent, the court held that the borrower could not state a § 1692c(a)(2) claim.  *Id.*  The

same conclusion should be reached here.

Moreover, the Poynters have made this defense even more unique to them by contemporaneously claiming that they may not have "knowingly and voluntarily agreed to" all of the loan modification's provisions, despite the fact that they and their counsel all signed the agreement. (Doc. 50 at 8). Because this is a potentially dispositive defense to the Poynters' own claim, and one unique to their mortgage alone which will require individualized evidence from the parties to resolve, "the most appropriate approach" is to deny the Poynters' motion for class certification or else "defer resolving [it]" until the Court first resolves this defense. *Thomas v. Moore USA, Inc.*, 194 F.R.D. 595, 602 (S.D. Ohio 1999); *see also Thompson*, 29 F.3d at 241; *Marx*, 747 F.2d at 1552; *Gwirtz*, 887 F.2d at 683.

## II.    THE POYNTERS AND THEIR COUNSEL WILL NOT BE ADEQUATE REPRESENTATIVES FOR THE PROPOSED CLASS.

Rule 23(a)(4) provides that a class may certified only if a court finds that the named plaintiff and her counsel can "fairly and adequately protect the interests of the class."

To be an adequate class representative, a plaintiff "must have common interests with unnamed members of the class." *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 757 (6th Cir. 2013). The plaintiff must "be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prods.*, 521 U.S. at 625-26. The Poynters are not such persons. For the reasons described above, the Poynters are not part of the proposed class and have not suffered an injury common to the class—in fact, because they and their counsel consented to Ocwen sending the Poynters notices directly, they have suffered no injury at all. *Backlund*, 964 F. Supp. 2d at 1016-17. Because the Poynters do not "possess the same interest and [have not] suffer[ed] the same injury as the class members," they cannot represent the proposed class. *Young*, 693 F.3d at 537; *see also Telco Grp., Inc. v. Ameritrade, Inc.*, 552 F.3d 893, 893-94 (8th Cir. 2009)

(a plaintiff who is not "a member of" a proposed class "cannot represent the putative but uncertified class").

Mr. Gordon and his firm would also be inadequate counsel to represent the proposed class. Counsel is adequate only if they demonstrate they "are qualified, experienced and generally able to conduct the litigation." *Vassalle*, 708 F.3d at 757. Under Rule 23, they must have "experience in handling class actions, other complex litigation, and the types of claims asserted in the action." FED. R. CIV. P. 23(g)(1)(A)(ii). To demonstrate this, counsel usually "furnish the court with firm resumes that set forth, among other things, counsel's background, experience, *and success in prior class actions*." 1 JOSEPH M. MCLAUGHLIN, MCLAUGHLIN ON CLASS ACTIONS: LAW AND PRACTICE § 4:38 at 1030 (10th ed. 2013). However, Mr. Gordon and his firm have provided none of that sort of information. Instead, they simply state they "have extensive experience in prosecuting complex litigation such as this," and reference their involvement in *Meredith v. Jefferson Cnty. Bd. of Educ.*, 551 U.S. 701 (2007). But *Meredith* was not a class action—it involved Equal Protection Clause challenges to a school's race-based student assignment plan. Counsel have simply left it to the Court and Ocwen to speculate about their "experience in handling class actions," even though the Court is *required* to evaluate counsel's experience with class litigation in deciding whether to appoint them as possible representative counsel. FED. R. CIV. P. 23(g)(1)(A); *see also In re Google, Inc. Cookie Placement Consumer Privacy Litig.*, No. 12-cv-2358, 2012 WL 5833604, at *2 (D. Del. Nov. 16, 2012) (declining to appoint counsel who "did not adequately address the Rule 23(g) factors, at least not in a helpful way").

Moreover, Mr. Gordon and his firm are material fact witnesses who were involved in the events underlying this case: advising the Poynters regarding the loan modification that serves as a defense to their claims, notarizing and attesting to the Poynters' signatures on the loan

16

modification, and thereafter making the Poynters' payments for them, interacting with Ocwen in their stead, and basically "tak[ing] care of all of this for" them. (Sauer Decl. at Ex. C (L. Poynter Dep. at 22:19-23)). Further, the Poynters' individual claims contest late fees charged them since November 2011, and question whether Ocwen accounted for all of the disputed payments Mr. Gordon supposedly made on their behalf (*see, e.g.*, Doc. 26 at ¶¶ 43, 46-49, 56, 134-37, 151-52, 158, 161, 168, 173, 188). Indeed, Mr. Gordon and his firm are essentially the only ones who can testify as to what payments were and were not made to Ocwen on the Poynters' loan during the relevant time period. Neither Mr. Poynter nor Mrs. Poynter were able to testify at deposition about any of this. Mr. Poynter disclaimed any personal knowledge of the facts of these claims and deferred to his wife,[3] and she did the same and deferred to Mr. Gordon.[4] In fact, Mr. Gordon has identified his firm as a fact witness in this case in both the Poynters' initial disclosures and through later discovery.[5] "[T]he necessity of [counsel's] testimony precludes [them] from adequately representing the proposed class as class counsel." *Irvin E. Schermer Trust by Kline v. Sun Equities Corp.*, 116 F.R.D. 332, 338 (D. Minn. 1987). *Accord* KENTUCKY RULES OF PROF'L CONDUCT, Rule 3.130(3.7); 32B AM. JUR. 2D *Federal Courts* § 1669 (on-line ed.) ("Where there is a

---

[3] *See, e.g.*, Sauer Decl. at Ex. D (D. Poynter Dep. at 10:1 – 10:15 (testifying he could not remember "anything about late charges on [the] loan," and did not remember ever receiving anything from Ocwen detailing charges he "didn't agree with"); *Id.* at 11:19 – 11:22 (testifying that he had nothing to say about Ocwen's servicing of the loan, and stating "[y]ou need to ask [my wife] some things, because she does all the business now.").

[4] *See, e.g.*, Sauer Decl. at Ex. C (L. Poynter Dep. at 22:11 – 22:23 (testifying she did not remember anything about fees Ocwen charged to the loan, and stating "I have other things to think about besides this, and we were letting Mr. Gordon take care of all this for us."); *Id.* at 28:6 – 28:14 (testifying that she knew nothing about their claim for delayed payment processing by Ocwen); *Id.* at 32:1 – 32:11 (testifying that she knew nothing about late charges assessed the loan because "[e]verything goes through Mr. Gordon"); *Id.* at 35:1 – 36:8 (testifying that she knew nothing about late charges to the loan because "Mr. Gordon takes care of all that," and that only "Mr. Gordon would know" if a late charge had been waived by Ocwen).

[5] *See* Sauer Decl. at Ex. E, § I.2 (identifying as a relevant fact witness "[t]he as yet unidentified custodian of the escrow account of Teddy B. Gordon from which mortgage payments have been consistently made"); *Id.* at Ex. F, p. 5 ("**Interrogatory # 1**: State the name, address and telephone number of each person with personal knowledge of any fact that supports, refutes, or otherwise relates to any of the allegations of your Complaint: **Answer**: …. Plaintiffs' Counsel ….").

substantial possibility that the class counsel will be called as a witness to the transaction in which he or she represented the named plaintiffs, and might therefore be disqualified from serving as counsel, the named plaintiffs are not adequate representatives of the class."); *Emerald Partners v. Berlin*, 564 A.2d 670, 680 (Del. Ch. 1989) (refusing to allow named plaintiff's counsel to continue as representative counsel because she "will likely be called to testify during the course of the litigation").

## III. THE POYNTERS HAVE FAILED TO PROVE NUMEROSITY OR ASCERTAINABILITY.

Rule 23(a)(1) requires proof that "the class is so numerous that joinder of all members is impracticable," and Rule 23(c)(1)(B) requires the Court to "define the class and class claims" in such a way that the class members may be objectively and feasibly ascertained.

Despite claiming to have engaged in "massive discovery efforts" here (Doc. 58-1 at 27), the Poynters admit they presently have no information that would permit them to ascertain who is in the class or even determine how many class members there may be. (*Id.* at 9). Apart from their own unique, individualized circumstance, they ask the Court to "assume," based on Ocwen's size and a "third party authorization" form that refers to real estate agents but contains no reference to lawyers, that the class of borrowers known to be represented by counsel is sufficiently numerous and the class members can be ascertained. (*Id.* at 13–15).

But assumptions alone are not enough for the Poynters to carry their burden of proof. They must come forward with evidence because they have the "positive burden" of proof. *Cash v. Swifton Land Corp.*, 434 F.2d 569, 571 (6th Cir. 1970). Unsubstantiated assumptions or bare speculation is not enough. *Golden v. City of Columbus*, 404 F.3d 950, 966 (6th Cir. 2005); *Alkire v. Irving*, 330 F.3d 802, 820 (6th Cir. 2003); *Gevedon v. Purdue Pharma*, 212 F.R.D. 333, 338 (E.D. Ky. 2002). *Accord Fleming v. Travenol Labs.*, 707 F.2d 829, 833 (5th Cir. 1983); *Valentino*

*v. Howlett*, 528 F.2d 975, 978 (7th Cir. 1976). *See generally* 7A WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL 3D § 1762 (2005) ("Although a party seeking class certification need not show the exact number of potential members in order to satisfy [Rule 23(a)(1)], the party does bear the burden of showing [numerosity] and mere speculation as to the number of parties involved is not sufficient."). With no evidence of the number of putative class members who might be included in the class, the Court must deny class certification. *See Fahey v. Encore Fin.*, No. 05-cv-1505, 2005 WL 2739323, at *2 (N.D. Ohio Oct. 24, 2005) (denying class certification in FDCPA case because plaintiff relied "only on the general characteristics of the Defendant's business" and thus failed to demonstrate that "a sufficient number of people actually received communications comparable to those at issue"). *Accord Makuc v. Am. Honda*, 835 F.2d 389, 394 (1st Cir. 1987); *Siles v. ILGWU Ret. Fund*, 783 F.2d 923, 930 (9th Cir. 1986); *Belles v. Schweiker*, 720 F.2d 509, 515 (8th Cir. 1983).

The Sixth Circuit's FDCPA class action decision in *Smith v. Transworld Systems, Inc.*, 953 F.2d 1025 (6th Cir. 1992), is directly on point. There, as here, the plaintiff merely alleged, based upon its size and standardized "boilerplate" forms, that the defendant's dealings with consumers justified a class action. *Id.* at 1033. The district court disagreed, and the Sixth Circuit affirmed. Because there, as here, the plaintiff failed to offer any evidence, the district court could not conclude that the "mandatory prerequisites of Fed. R. Civ. P. 23(a) had been met." *Id.* The district court in *Edwards v. McCormick*, 196 F.R.D. 487 (S.D. Ohio 2000), followed *Smith* and denied class certification in another FDCPA case for the same reason. The plaintiffs there failed to produce any evidence concerning even one other member of the proposed FDCPA class. Instead, they offered "[m]ere supposition." *Id.* at 494. In denying class certification, the court held that the plaintiffs' "conclusory allegations of receipt of illegal letters by great numbers of individuals"

was "not enough to satisfy Rule 23(a)'s numerosity requirement." *Id.* Likewise, here, the Court must deny class certification due to the Poynters' absolute failure of proof.

The Poynters have only come forward with conclusory allegations of the gross number of borrowers who have loans serviced by Ocwen and other generalized statistics culled from the internet that they claim can be used to "guesstimate" the percentage of borrowers who may be represented by counsel. (*See* Doc. 58-1 at 10–11). They have offered no proof of even one other plaintiff who received the same direct communications they were sent while represented by counsel with respect to the debt that was the subject of the communication, much less under the same circumstances (where, in the Poynters' case, they and their counsel consented to such notices being sent directly to the Poynters themselves). Without proof of the net number of plaintiffs whose circumstances are substantially similar to their own, the Poynters have failed to carry their positive burden of proof.

The Poynters' reliance on *Young v. Nationwide Mutual Insurance*, 693 F.3d 532 (6th Cir. 2012), and *Kelly v. Montgomery Lynch & Associates*, No. 07-cv-919, 2007 WL 4562913 (N.D. Ohio Dec. 19, 2007), is misplaced. (*See* Doc. 58-1 at 14-15). Neither case stands for the proposition that the court can "assume" numerosity is satisfied. In *Young*, the court's 1% error rate was based upon evidence offered by the plaintiff's expert. 693 F.2d at 541–42. And in *Kelly*, the defendant admitted that the collection letter at the heart of the FDCPA case had been "used . . . for an extended period of time." 2007 WL 4562913, at *3.

No such circumstances exist here. The proposed class definition is not even limited to a single type of direct contact, and the "third party authorization" that Poynters complain about is not the only direct contact they themselves are relying upon. (*See, e.g.*, Doc. 58-1 at 19-20). Moreover, the third party authorization form itself contains no reference to lawyers and no

indication that it was designed to be used with respect to borrowers represented by counsel. (Doc. 26-4). Instead, its content suggests its intended, primary purpose is to authorize communications with a borrower's real estate agents, relatives, and the like. (*Id.*). There is no evidence in the record that the form was uniformly sent to borrowers represented by counsel, or indeed anyone besides the Poynters themselves. And given the fact that the Poynters and their counsel gave Ocwen prior consent to directly contact the Poynters through the November 2011 loan modification, and given that the loan modification they negotiated and executed expressly requires any changes to its terms to be memorialized in a writing signed by the Poynters, a purely *ad hoc* use of this form in the Poynters' own unique, atypical circumstance should hardly be surprising. The mere existence of that form, which does not mention borrowers represented by counsel, says nothing about whether the proposed class is sufficiently numerous, or even ascertainable. The "rigorous analysis" of Rule 23(a)'s factors must be predicated on "evidence." *Young*, 693 F.3d at 537; *see also Gooch*, 672 F.3d at 417-18; *Am. Med. Sys.*, 75 F.3d at 1079. Without *any* evidence establishing numerosity, the Court can deny class certification on Rule 23(a)(1) grounds alone.

Similarly, it is impossible to ascertain objectively or feasibly who is a member of the class defined by the Poynters. (*See* Doc. 58-1 at 7). Objectivity and administrative feasibility are required by the strong doctrine of ascertainability.[6] The court should so hold. As in *Buckhead v. Louisville Gas & Electric*, the Poynters have presented "no evidence" of anyone with "similar circumstances," much less any evidence on how those persons could be objectively identified. 250 F.R.D. 287, 292 (W.D. Ky. 2008). And because the class definition is subjectively drafted, it

---

[6] *See, e.g.*, *Brecher v. Republic of Argentina*, 806 F.3d 22, 24-25 (2d Cir. 2015); *Carrera v. Bayer Corp.*, 727 F.3d 300, 307–08 (3d Cir. 2013); *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358–60 (4th Cir. 2014); *Karhu v. Vital Pharm., Inc.*, — F. App'x —, 2015 WL 3560722, at *2–4 (11th Cir. June 9, 2015). *Cf. Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 524–27 (6th Cir. 2015) (noting that while ascertainability does not require "100% accuracy," it still requires use of "objective criteria"—a plaintiff must offer "evidence" at the class certification stage that there is a feasible means of identifying members of the proposed class).

requires layer upon layer of individual factfinding just to identify who may be a member of the proposed class. For example, individual factfinding would be necessary to determine whether, with respect to any given customer, Ocwen "knew" he or she was "represented by an attorney" and "had knowledge of, or could readily ascertain," the attorney's name, address, *etc*. (Doc. 58-1 at 7). More individual factfinding would be required to identify which attorneys did and did not respond to Ocwen within a "reasonable time" as described in the proposed class definition. 15 U.S.C. § 1692c(a)(2); *see also* Section IV.E *infra*. Determining who is and is not a "consumer" within the meaning of the FDCPA, whether Ocwen was a "debt collector" under the FDCPA with respect to anyone's loan, and which communications were "in connection with an effort to collect a debt" within the meaning of the FDCPA all add numerous additional layers of individualized factfinding just to determine who would be in the class and who should receive notice. *See* Sections IV.B – IV.D *infra*. Then, as the Poynters' own claims demonstrate, further individual factfinding would be required to determine who did and did not consent to direct contact by Ocwen, despite the existence of a "known" attorney-client relationship. *Compare* Section I.B *supra with* Sections IV.C & IV.E *infra*. Such an extended chain of "individualized factfinding" is the antithesis of ascertainability. *Romberio*, 385 F. App'x at 431.

## IV. NO ELEMENT OF THE § 1692c(a)(2) CLAIM OF THE PROPOSED CLASS CAN BE ESTABLISHED WITH COMMON EVIDENCE.

To justify class certification, the Poynters must prove "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The commonality requirement ensures that "[i]t is unlikely that differences in the factual background of each claim will affect the outcome of the legal issue," increasing the likelihood that classwide adjudication will "save[] the resources of both the courts and the parties by permitting an issue potentially effecting every [class member] to be litigated in an economical fashion." *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979). But "not

every common question . . . will suffice," since "at a sufficiently abstract level of generalization, almost any set of claims can be said to display commonality." *Sprague*, 133 F.3d at 397. "What we are looking for is a common issue the resolution of which will advance the litigation," *id.*, and is of "such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 131 S. Ct. at 2551.

Because class certification is sought under Rule 23(b)(3), the Poynters must also demonstrate that those common issues predominate over any individual ones. *Comcast*, 133 S. Ct. at 1432. To satisfying this "demanding" requirement, *id.*, the Poynters "must establish that the issues in the class action *that are subject to generalized proof*, and thus applicable to the class as a whole, predominate over those issues that are subject only to individualized proof." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2007) (emphasis added). In this way, predominance "guards against certifying class actions that could overwhelm or confuse a jury or compromise a party's defense" by ensuring that "individual issues can be considered in a manageable, time-efficient, and fair manner." *Croder v. Ford Motor Co.*, 297 F.R.D. 572, 576 (W.D. Ky. 2014).

Although the Poynters point to a number of *questions* they assert are common to the proposed class (*see* Doc. 58-1 at 16), the Supreme Court has emphasized that "[w]hat matters to class certification is not the raising of common 'questions'—even in droves—but, rather the capacity of classwide proceeding to generate common answers apt to drive the resolution of the litigation. ***Dissimilarities within the proposed class are what have the potential to impede the generation of common answers***." *Wal-Mart*, 131 S. Ct. at 2551 (emphasis added). What matters is not that each class member must prove the same elements of liability. The elements of a claim are the same no matter how many people assert it, whether simultaneously or in succession.

Instead, the commonality and predominance requirements require that when a claim is to be asserted on behalf of a class, the elements of that claim be principally resolvable through common proof offered by the named plaintiff that will generate "common answers" for everyone else in the class. Absent evidence that "some glue holds the alleged *reasons* for [a defendant's actions with respect to each class member] together,"[7] thereby demonstrating that "all members of the class have suffered the same injury,"[8] certification would be improper.

Here, to prevail on the § 1692c(a)(2) claim, each class member must demonstrate, among other things, that: (1) she is a "consumer" within the meaning of the FDCPA, (2) who was contacted by Ocwen "in connection with the collection of any debt," (3) that Ocwen is a "debt collector" within the meaning of the FDCPA, (4) who had knowledge that the class member was represented by an attorney with respect to such debt, and (5) knowledge of the name and contact information of the attorney. 15 U.S.C. § 1692(c)(2). Each class member will also have to show that neither she nor her counsel consented to the contact(s). As shown below, the answers to these questions are not subject to common proof, but are inherently dependent on the totality of each borrower's circumstances and the particulars surrounding each contact Ocwen had with them.

A.   **The Poynters have failed to show Ocwen maintained any "policy or practice" that called for the company to directly contact borrowers it knew to be represented by counsel.**

Despite the supposedly "massive discovery efforts" undertaken by the Poynters in this case (Doc. 58-1 at 27), the only "evidence" they offer to suggest that Ocwen had a "policy or practice" of contacting borrowers it "knew" to represented by counsel is a contrived reading of an earlier brief filed by Ocwen's counsel. As demonstrated above, the Poynters mischaracterize the brief.

---

[7] *In re Countrywide Fin. Corp. Mortg. Lending Practices Litig.*, 708 F.3d 704, 707 (6th Cir. 2013).

[8] *Rikos*, 799 F.3d at 505.

A full reading of the brief, without ellipses, shows that Ocwen's counsel actually stated that no such policy or practice existed.  (*See* Introduction *supra*).

Predominance must be proved with evidence, not conjecture.  *Comcast*, 133 S. Ct. at 1432; *Grubb v. Nucor Steel Marion, Inc*., No. 14-cv-158, 2015 WL 5023030, at *2 (N.D. Ohio Aug. 25, 2015) ("To the extent Plaintiffs believe Rule 23 does not require some minimal form of evidentiary support, they are wrong.").  A class cannot be certified where the plaintiff "fail[s] to put forth any evidence that the cause of the entire class's damages could be determined in a single proceeding." *Powell v. Tosh*, 280 F.R.D. 296, 309 (W.D. Ky. 2012); *accord Am. Med. Sys*., 75 F.3d at 1081 (class may not be certified where "there is no 'common cause' of [the class members' injury]"); *DL v. Dist. of Columbia*, 713 F.3d 120, 126 (D.C. Cir. 2013) (a class may not be certified "[i]n the absence of identification of a policy or practice that affects all members of the class"); *Randleman v. Fidelity Nat'l Title Ins. Co*., 646 F.3d 347, 353 (6th Cir. 2011) (absent evidence of a uniform policy or practice by the defendant, predominance does not exist because "determining liability would require an examination of" individualized evidence). By failing to produce evidence that Ocwen had a uniform "policy or practice" of directly contacting all borrowers it knew to be represented by counsel under a common set of facts shared by the entire class, the Poynters have failed to satisfy their Rule 23 burden.

### B.    Determining whether class members are "consumers" within the meaning of the FDCPA cannot be established through common evidence.

Only "consumers" may state a claim under § 1692c(a)(2).  A "consumer" is "any natural person obligated or allegedly obligated to pay . . . . money arising out of a transaction . . . primarily for personal, family or household purposes."  15 U.S.C. §§ 1692a(3), (5).  Determining whether borrowers whose loans were serviced by Ocwen are "consumers" within the meaning of the FDCPA cannot be established on a classwide basis through common proof.

Determining, for example, whether borrowers took out their individual loans "primarily for personal, family or household purposes" cannot be established on a classwide basis. *See, e.g.*, *Corder v. Ford Motor Co*., 283 F.R.D. 337, 344 (W.D. Ky. 2012) (class certification precluded where each class member's "primary reason for purchasing a truck was for personal, family, or household use" would have to be determined—"this court can see no way to efficiently manage such . . . . an individualized inquiry.").[9]  As the Court explained in *Corder*, the class device cannot be employed in a way that that precludes a defendant from disputing and litigating each individual's facts before a jury.  *Corder*, 283 F.R.D. at 343 (rejecting notion that claim forms or class member questionnaires could be used to answer whether a vehicle was purchased "primarily for personal, family or household purposes," because "this court will not certify a class action under the premise that [a defendant] will not be entitled to fully litigate that statutory element in front of a jury, at least for those class members where the facts and inferences to be drawn therefrom are disputed.").  The Court's reasoning is entirely consistent with Due Process and the Rules Enabling Act.  *See, e.g.*, *Wal-Mart*, 131 S. Ct. at 2561 ("[A] class cannot be certified on the premise that [a defendant] will not be entitled to litigate its … defenses to individual claims."); *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co*., 559 U.S. 393, 408 (2010) (under the Rules Enabling Act, a class action must "leave[] the parties' legal rights and duties intact and the

---

[9] *See also Corder v. Ford Motor Co*., 297 F.R.D. 572, 578 (W.D. Ky. 2014) (denying plaintiff's renewed motion for class certification because the revised class definition "does not address the consumer's primary purpose for purchasing or leasing a vehicle.  As such, the court would still need to undertake an individualized inquiry into the customers' primary initial intended use for the vehicle at the time [of] acquisition."); *Arabian v. Sony Elec., Inc*., No. 05-cv-1741, 2007 WL 627977, at *14 (S.D. Cal. Feb. 22, 2007) (predominance not satisfied because resolving whether each class member acquired a laptop "for personal, family, or household purposes …. will require an individual examination of the purpose for which each laptop was acquired"); *Rockey v. Courtesy Motors, Inc*., 199 F.R.D. 578, 593 (W.D. Mich. 2001) (concluding "common questions d[id] not predominate in [Truth In Lending Act] case because … each plaintiff must prove that the automobile purchase was for personal, family or household use"); *Carpenter v. BMW of N. Am., Inc*., No. 99-cv-214, 1999 WL 415390, at *3 n.6 (E.D. Pa. June 21, 1999) (noting that individual inquiry would be required "to determine which Pennsylvania purchasers: 1) use the automobile 'primarily for personal, family or household purposes'").

rules of decision unchanged").

And even if there somehow was common evidence that could identify those class members who were "consumers" at the time their mortgages originated, further evidence from them would be required to determine whether they remained "consumers" at the time any communications were sent to them. A borrower's intervening bankruptcy, for example, would preclude her from being considered a "consumer" at the time such communications occurred. *LaCourse v. Ocwen Loan Serv., LLC*, No. 14-cv-013, 2015 WL 1565250, at *11 (D.N.H. Apr. 7, 2015) (dismissing borrower's FDCPA claims against Ocwen because "the plaintiffs allege that their 'mortgage debt' was discharged in bankruptcy").[10] Such evidence would be inherently individualized, and certainly not common to the class as a whole.

C. **Determining whether class members were contacted by Ocwen "in connection with the collection of any debt" without their consent cannot be established through common evidence.**

Determining whether Ocwen violated § 1692c(a)(2) by contacting class members, or requiring written authorizations from them before communicating with their counsel, is also not capable of common proof. The Poynters' central contention, incorporated into their proposed class definition, appears to be that *any* direct communication by Ocwen with a borrower it knows to be represented by counsel constitutes a violation of § 1692c(a)(2). (Doc. 58-1 at 7). However, the FDCPA "does not apply to *every* communication between a debt collector and a debtor." *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011) (emphasis in original).

---

[10] *See also Arruda v. Sears, Roebuck & Co*., 310 F.3d 13, 17, 23-24 (1st Cir. 2002) (FDCPA did not apply to secured party's efforts to negotiate payments from discharged debtors in lieu of exercising its in rem rights to enforce the security interests it held against their property); *Kenney v. Citimortgage, Inc*., No. 14-cv-52436, 2015 WL 1957880, at *5 (D. Kan. Apr. 29, 2015) (secured creditor's efforts to enforce mortgage did "not fall under the FDCPA as a matter of law" because the plaintiff had been discharged of personal liability on the loan); *Shaw v. Bank of Am., NA*, No. 10-cv-11021, 2015 WL 224666, at *6 (D. Mass. Jan. 15, 2015) (secured creditor's efforts to enforce mortgage were not covered by the FDCPA because there was no "debt": the plaintiff had received a bankruptcy discharge and was "not liable for any deficiency").

Section 1692c(a) prohibits *only* communications made "in connection with the collection of a[] debt."  Other forms of direct contact are permitted.  For example, § 1692c permits debt collectors to communicate directly with borrowers to inform them "specific remedies" may be invoked under contract or state law.  15 U.S.C. §§1692c(c)(2)-(3); *see also Buffington v. Schuman & Schuman, PC*, No. 00-cv-1620, 2001 WL 34082273, at *2-3 (N.D.N.Y. Feb. 21, 2001) (default notice sent directly to represented borrower constituted permissible communication under § 1692c(c)).  Debt collectors may also directly contact represented borrowers to (1) provide notices or disclosures required by state and federal law;[11] (2) respond to inquiries or complaints made by the borrowers;[12]  (3) discuss other debts the borrowers may owe;[13] or (4) even communicate with the borrowers regarding debts subject to attorney representation so long as the communications are not related to "collection of [the] debt."  15 U.S.C. § 1692c(a).[14]

---

[11] *See, e.g., Estep v. Manley Deas Kochalski, LLC*, 942 F. Supp. 2d 758, 763 (S.D. Ohio 2013) (correspondence mandated by HUD), *aff'd*, 552 F. App'x 502 (6th Cir. 2014); *Vitullo v. Mancini*, 684 F. Supp. 2d 747, 759 (E.D. Va. 2010) (notice of acceleration and foreclosure permissible as required by state law).  The Consumer Financial Protection Bureau also recently issued a bulletin to mortgage servicers, stating the agency's conclusion that the FDCPA's "cease communication" rules "do[] not generally make servicers that are debt collectors liable under the FDCPA if they comply with certain provisions of Regulation X[, including 12 C.F.R.] 1026.41." *See Implementation Guidance for Certain Mortgage Servicing Rules*, CFPB Bulletin 2013-12 (Oct. 15, 2013), *available at* 2013 WL 9001249.  Section 1026.41(a)(2) obligates loan servicers to "provide the consumer, for each billing cycle, a periodic statement."  Compliance with such CFPB pronouncements serves a complete defense to civil liability under the FDCPA.  15 U.S.C. § 1692k(e).

[12] *Dyer v. Select Portfolio Serv., Inc.*, No. 15-cv-121, 2015 WL 3510283, at *4 (M.D. Fla. June 4, 2015) ("[L]etters sent in response to correspondence or an inquiry from a debtor are communications induced by the debtor and not the debt collector."); *Roth v. CitiMortgage, Inc.*, No. 12-cv-2446, 2013 WL 5205775, at *11 (E.D.N.Y. Sept. 11, 2013) ("The FDCPA was intended to protect consumers from communications initiated by debt collectors, not consumers."), *aff'd*, 756 F.3d 178 (2d Cir. 2014); *Udell v. Kansas Counselors, Inc.*, 313 F. Supp. 2d 1135, 1144-45 (D. Kan. 2004) (collecting cases).

[13] *See, e.g., Grden*, 643 F.3d at 173 (communications concerning other debts, for which no notice of representation has been provided, are permissible); *Granziano v. Harrison*, 950 F.2d 107, 113 (3d Cir. 1991); *Udell*, 313 F. Supp. 2d at 1140-43; *Robinson v. Transworld Sys., Inc.*, 876 F. Supp. 385, 390 (N.D.N.Y. 1995) ("Knowledge of prior representation with respect to a different debt does not preclude the debt collector from communicating directly with the consumer on another debt collection matter."); *Masuda v. Thomas Richards & Co.*, 759 F. Supp. 1456, 1464-65 (C.D. Cal. 1991) ("A debt collector who knows a consumer is represented by counsel with respect to a debt is not required to assume similar representation on other debts").

[14] *See, e.g., Bailey v. Security Nat'l Serv. Corp.*, 154 F.3d 384, 388-89 (7th Cir. 1998) (notice of account status under forbearance agreement not a communication in connection with the collection of a debt); *Wood v. Citibank, NA*, No. 14-cv-2819, 2015 WL 3561494, at *3-4 (M.D. Fla. June 5, 2015) (§ 1692c(a)(2) does not prohibit "purely informational" communications, only those "made in connection with the collection of a debt"); *Nash v. Green Tree*

As a result, determining whether Ocwen's contacts with the class members violated § 1692c(a)(2) cannot be resolved through common proof. Resolving that question requires consideration of the "context and content" of *each* communication with *each* borrower, *Gburek v. Litton Loan Serv., LP*, 614 F.3d 380, 386 (7th Cir. 2010), because "whether a communication was sent 'in connection with' an attempt to collect a debt is a question of objective fact" that must be evaluated within the context it was made because "[a] communication that is not itself a collection attempt, but that aims to make such an attempt more likely to succeed, is one that has the requisite connection." *Wright v. Ocwen Loan Serv., LLC*, No. 12-cv-14762, 2013 WL 5532687, at *6 (E.D. Mich. Oct. 7, 2013).[15] Because the Poynters do not propose to certify the class with respect to any single, common classwide communication from Ocwen, much less one sent under a uniform set of material facts, commonality and predominance are defeated by the necessity of individualized inquiries regarding each contact by Ocwen with the members of the proposed class. *See, e.g.*, *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Serv., Inc*., 601 F.3d 1159, 1176 (11th Cir. 2010) (variation between class members' contract terms found to be "fatal to predominance"); *Rothwell v. Chubb Life Ins. Co. of Am*., 191 F.R.D. 25, 30 (D.N.H. 1998) (class certification proper only where variation between "non-uniform written" documents is "immaterial").

---

*Serv., LLC*, 943 F. Supp. 2d 640, 655-56 (E.D. Va. 2013) (notification of assignment of new account representative, and correspondence concerning loan modification options, were not communications in connection with the collection of a debt); *Roth*, 2013 WL 5205775, at *10-11 (correspondence discussing debt restructuring options was not a communication in connection with the collection of a debt). *Accord Zervos v. Ocwen Loan Serv., LLC*, No. 11-cv-3757, 2012 WL 1107689, at *5 (D. Md. Mar. 29, 2012) (granting motion to dismiss Section 1692c(a)(2) claim based on voice mail left for borrower because "the Court cannot draw th[e] inference, even on a motion to dismiss," that the communication was related to debt collection).

[15] *See also Grden*, 643 F.3d at 174 ("[A]n 'explicit demand for payment' is not always necessary": "for a communication to be in connection with the collection of a debt," it must be determined whether "an animating purpose of the communication [was] to induce payment by the debtor."); *Gburek*, 614 F.3d at 385 (to determine whether a communication was made to collect a debt, courts apply a "common sense inquiry" based on all factors surrounding the communication, including the "purpose and context of the communications.").

Complicating the matter further, debt collectors may contact represented borrowers who consent to such contact, or whose counsel consents to such contact. 15 U.S.C. §§ 1692c(a), (c)(a)(2). But as the Poynter's own case shows, determining whether consent was given by class members or their counsel is not subject to common proof. The Poynters have offered no "viable theory of generalized proof to identify [such] persons;" and if "no class-wide proof [is] available to decide consent . . . only mini-trials can determine this issue," thereby precluding class certification. *Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 329 (5th Cir. 2008); *see also Gannon v. Network Tel. Serv., Inc.*, No. 12-cv-9777, 2013 WL 2450199, at *2 (C.D. Cal. June 5, 2013) (denying class certification where "individual inquiry into whether the potential class members consented to receiving text messages" would be required); *Melton ex rel. Dutton v. Carolina Power & Light Co.*, 283 F.R.D. 280, 290 (D.S.C. 2012) (necessity of "individualized evidence of notice, waiver, consent, and laches .... make[s] it unlikely that any supposed common question is of such a nature that it is capable of classwide resolution").

### D. Determining whether Ocwen was a "debt collector" with respect to all of the class members cannot be established through common evidence.

Determining whether Ocwen was "debt collector" is not capable of common proof, either. Any borrower asserting an FDCPA clam against a loan servicer must, "as a threshold matter," demonstrate that the servicer "falls within the FDCPA's definition of a 'debt collector.'" *Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2003). But loan servicers like Ocwen are not automatically "debt collectors" under the FDCPA with respect to every loan they service. Instead, determining whether a loan servicer is a "debt collector" must be resolved "on a case-by-case basis" based on the individual circumstances surrounding each loan. *James v. Wadas*, 724 F.3d 1312, 1317 (10th Cir. 2013) (quoting *Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti*, 374 F.3d 56, 62 (2d Cir. 2004)). A loan servicer may be a "debt collector" with respect

to one borrower, but not another, based on the varying circumstances between their loans.[16] Consideration must also be given to "the purpose for which the debt was assigned" the servicer, the status of the loan at that time, and "how the [servicer] behaves with respect to the debt." *Salvato v. Ocwen Loan Serv., LLC*, No. 12-cv-88, 2012 WL 3018051, at *6 (S.D. Cal. July 24, 2012). As a result, servicers who acquire current debts may nevertheless be "debt collectors," and servicers who acquire defaulted debts may not be "debt collectors," based on how they thereafter treat each loan.[17] Subsequent events may also cause a servicer who initially was a "debt collector" to lose that status. For example, a loan servicer who subsequently extends a loan modification to a borrower to cure the borrower's default, and who thereafter focuses on servicing the loan pursuant to the terms of the modified payment plan, will no longer be considered a "debt collector" with respect to the modified loan.[18] Even determining whether any single loan was in default at the time servicing rights to it is no simple task. *See, e.g.*, *Alibrandi v. Fin. Outsourcing Serv., Inc.*, 333 F.3d 82, 86 (2d Cir. 2003) ("In applying the FDCPA, courts have repeatedly distinguished between a debt that is in default and a debt that is merely outstanding, emphasizing that only after some period of time does an outstanding debt go into default"); *Jones v. Intuition, Inc.*, 12 F. Supp. 2d 775, 779 (W.D. Tenn. 1998) (noting the difference between "default and "delinquent" in the

---

[16] *Compare Shugart v. Ocwen Loan Serv., LLC*, 747 F. Supp. 2d 938, 943 (S.D. Ohio 2010) (concluding Ocwen was a "debt collector") *with Bridge v. Ocwen Fed. Bank*, No. 07-2739, 2014 WL 2442183, at *7 (N.D. Ohio May 30, 2014) (concluding Ocwen was not a "debt collector"); *Jacobs v. Wells Fargo & Co.*, No. 10-183, 2011 WL 5120408, at *2 (S.D. Ohio Oct. 27, 2011) (not a "debt collector").

[17] *Compare Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 362-63 (6th Cir. 2012) *with Allen v. Bank of Am., NA*, 933 F. Supp. 2d 716, 729 (D. Md. 2013); *Padgett v. OneWest Bank, FSB*, No. 10-08, 2010 WL 1539839, at *15 (N.D. W. Va. Apr. 19, 2010).

[18] *See, e.g., Bailey v. Sec. Nat'l Serv. Corp.*, 154 F.3d 384 (7th Cir. 1998); *Faulconer v. Mortg. Elec. Registration Sys., Inc.*, No. 12-cv-246, 2014 WL 583006, at *7 (M.D. Ga. Feb. 13, 2014) (recognizing that a servicer who enters into a loan modification with a borrower whose debt was in default at the time it was acquired may no longer be labeled a "debt collector" with respect to the loan, but dismissing the plaintiffs' FDCPA claims on other grounds). *Cf. Gritters Gritters v. Ocwen Loan Servicing, LLC*, No. 14-cv-916, 2014 WL 7451682, at *4-5 (N.D. Ill. Dec. 31, 2014) (loan servicer remained a "debt collector" within the meaning of the FDCPA, even though it had extended the plaintiff a loan modification, because the court found that the servicer had failed to honor the modification and had continued to treat her loan "as a debt in default").

FDCPA context).

Determining whether Ocwen was a "debt collector" with respect to absent members of the putative class cannot be resolved through common proof. Instead, each class member's loan servicing file would have to be examined to determine whether Ocwen "falls within the FDCPA's definition of a 'debt collector'" with respect to that borrower, and during what period of time. *Montgomery*, 346 F.3d at 698.

> **E.      Determining whether Ocwen knew the class members were represented by counsel cannot be established through common evidence.**

Even determining whether Ocwen "knew" the class members to be represented by counsel cannot be established through common evidence. To prevail on the § 1692c(a)(2) claim, each class member must prove that she "was represented by an attorney," and that Ocwen "had 'actual knowledge'" of that representation. *Hubbard v. Nat'l Bond and Collection Assocs., Inc*., 126 B.R. 422, 426 (D. Del. 1991), *aff'd*, 947 F.2d 935 (3d Cir. 1991).

The Poynters have failed to identify how the Court could resolve this issue of subjective case-by-case knowledge through common evidence. That is problematic enough. But to prove they were represented at the time the challenged contacts occurred, each class member would have to establish both the duration and scope of her representation by her own counsel. *See, e.g*., *Sudduth v. Citimortgage, Inc*., 79 F. Supp. 3d 1193, 1199 (D. Colo. 2015) (dismissing § 1692c(a)(2) claim because, although plaintiff alleged she was represented by counsel, she failed to allege that representation continued through the time the challenged contacts occurred); *Berndt v. Fairfield Resorts, Inc*., 337 F. Supp. 2d 1120, 1132 (W.D. Wisc. 2004) (the "attorney's representation has to be specific to the debt in question"); *Hubbard*, 126 B.R. at 427 ("The fact that a debtor retained an attorney more than a year previously, for the specific task of filling out a bankruptcy petition, does not suggest that the same attorney has been continuously retained to

represent the debtor in all matters with her creditors."). In other words, the fact that Ocwen may have been informed that a borrower was represented by counsel on some matter, at some point in the past, does not alone suffice to establish § 1692c(a)(2) liability to that borrower for any and all direct contacts. It must also be shown that the representation actually continued through the time the communication occurred, *and* that the representation actually covered the servicing of the debt in question (and was not more limited in scope). Those issues cannot be resolved through common proof.

Moreover, a debt collector may contact a borrower directly, even if it knows the borrower is represented by counsel, "if the attorney fails to respond within a *reasonable period of time* to a communication from the debt collector." 15 U.S.C. § 1692c(a)(2) (emphasis added). Courts have widely rejected attempts to pursue on a class basis claims that depend on a "reasonableness" inquiry like this one. *See, e.g.*, *Crosby v. Social Sec. Admin.*, 796 F.2d 576, 579-80 (1st Cir. 1986) (class certification precluded by necessity of determining whether class members were given hearings "within a reasonable time," because that could only be resolved "on a case-by-case basis" as "a delay of any particular period of time may be quite reasonable in one case and extremely unreasonable in another."); *Cohen v. Implant Innovations, Inc*., 259 F.R.D. 617, 621 (S.D. Fla. 2008) ("what constitutes a reasonable time is a highly individualized factual determination" that precludes class certification).

In sum, none of the elements of the § 1692c(a)(2) claim for the members of this putative class is "capable of classwide resolution," *Wal-Mart*, 131 S. Ct. at 2551, because those elements cannot be proven with common evidence. Instead, each element of the claim requires consideration of highly individualized evidence as to each and every class member. Certification under these circumstances would be improper because nothing could be "resolve[d] . . . in one

stroke," *id.*, through "generalized proof." *Beattie*, 511 F.3d at 564. The Poytners' motion must be denied.

## V. THE POYNTERS HAVE FAILED TO SHOW THAT A CLASS ACTION IS THE SUPERIOR METHOD OF ADJUDICATING THEIR DISPUTES.

The Poynters have also failed to demonstrate "that a class action is superior to other available methods for fairly and efficiently adjudicating th[is] controversy." FED R. CIV. P. 23(b)(3). Superiority requires consideration of "the likely difficulties [that would be encountered] in managing a class action" and "the desirability . . . of concentrating the litigation of the claims." FED. R. CIV. P. 23(b)(3)(C)-(D). But here common questions do not predominate over those affecting only individual class members. That is reason alone to find class certification "undesirabl[e]" here. FED. R. CIV. P. 23(b)(3)(C); *see also Sacred Hearth Health Sys.*, 601 F.3d at 1184 ("[T]he less common the issues, the less desirable a class action will be as a vehicle for resolving them.").

On top of that, not one element of the § 1692c(a)(2) claim can be resolved through common proof. Iindividualized evidence is required at every level from the class members to satisfy their burdens of proof. Every class member would have to establish that he or she is a "consumer," which would necessitate multiple levels of individualized proof. Their efforts to establish that Ocwen is a "debt collector" with respect to their varied mortgages would require the same. Determining whether Owen knew each of them was represented at the time any communications were sent would also require individualized proof, both from the class members and from Ocwen. And determining whether the communications themselves violated § 1692c(a)(2) would certainly require highly individualized proof concerning the context and content of every one of those communications. ***And all of this concerns determinations as to liability alone.*** Add to it the necessity of individualized evidence from the class members concerning their own damages and

it quickly becomes apparent that there is no advantage at all to use of the class action device here. Class certification would simply force each and every class member to come forward and adjudicate his or her individual claim through individualized evidence in the same manner they would be required to do in an individual lawsuit. *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1192 (9th Cir. 2001) ("If each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually, a class action is not 'superior.'").[19]

Other manageability concerns abound, the greatest being that of notice. Upon certification, every member of the proposed class would have a Due Process right to notice of the pendency of this case. *Vassalle*, 708 F.3d at 759. "Although Rule 23 does not specify any timetables, notice is generally issued promptly after certification." *Tylka v. Gerber Prods. Co.*, 182 F.R.D. 573, 579 (N.D. Ill. 1998). And "Rule 23(b)(3) does not permit anything less than individual notice to each prospective [c]lass [m]ember, and the law is quite clear that concerns about the financial burdens [to plaintiffs' counsel] of such notice cannot excuse noncompliance with that requirement." *Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 92 (E.D.N.Y. 2007). Yet the Poynters offer no proposal concerning how, let alone by when, they would provide notice to the proposed class. In fact, although the Poynters claim to "have undertaken massive discovery efforts" in this case (Doc. 58-1 at 27), they also admit it is impossible to know whether the class is numerous or not. If the number or identity of class members is unknown, it is impossible to provide them notice. This alone should preclude class certification. *See Am. Med. Sys.*, 75 F.3d at 1086 ("The court should

---

[19] In addition, the Poynters concede, as they must (*see* Doc. 58-1 at 23), that mental anguish and other forms of actual damages they claim for the class are highly individualized and not capable of classwide proof. This further negates predominance of common issues in this case, and would compound the manageability concerns that overwhelm the Poynters' proposed class. *Comcast*, 133 S. Ct. at 1432-33 (reversing class certification for lack of predominance where "damages are not capable of measurement on a classwide basis" and "questions of individual damage calculations will inevitably overwhelm questions common to the class.").

defer decision on certification … if the existing record is inadequate for resolving the relevant issues.").

Rule 23 also requires the Court consider "the class members' interests in individually controlling the prosecution or defense of separate actions." Fed. R. Civ. P. 23(b)(3)(A). Generally, "[w]here damages suffered by each putative class member are not large, this factor weighs in favor of certifying a class action." *Zinser*, 253 F.3d at 1190. However, "FDCPA claims are distinguishable from other small-amount claims in that the FDCPA provides for statutory damages and attorney's fees, so that there would be no lack of incentive for plaintiffs to pursue individual actions." *Hicks v. Client Servs., Inc*., 257 F.R.D. 699, 701 (S.D. Fla. 2009); *see also Hyderi v. Wash, Mut. Bank, FA*, 235 F.R.D. 390, 397 (N.D. Ill. 2008) ("Precedent teaches that the availability of statutory damages plus the ability to recover attorneys fees and costs provides substantial incentives to bring meritorious individual suits."); *Jones v. CBE Grp., Inc*., 215 F.R.D. 558, 570 (D. Minn. 2003) (Noting that "[t]here is no lack of incentive for either plaintiffs or counsel to pursue individual FDCPA actions" in light of the fee-recovery provision in § 1692k). On top of that, ***the proposed class here is a group of persons who supposedly already have their own counsel.*** The Court should be loath to certify a class that would impose an attorney-client relationship that could interfere with or usurp those existing relationships.

Finally, because § 1692c(a)(2) liability does not attach to communications required by state law, *see* Section IV.C *supra,* this Court would be required to compare each communication Ocwen sent a proposed class member with the state law(s) applicable to that class member's loan, thereby potentially requiring the Court and jury to apply the varying foreclosure laws of all fifty states in addition to the FDCPA itself. Because "[n]o class action is proper unless all litigants are governed

by the same legal rules,"[20] identifying the applicable body or bodies of state law that may apply "is critical because variations" in the requirements of those laws may render a class action unmanageable. *Ward v. Dixie Nat'l Life Ins. Co.*, 257 F. App'x 620, 628-29 (4th Cir. 2007). Because the Court "must apply an individualized choice of law analysis to each plaintiff's claims, the proliferation of disparate factual and legal issues [here would be] compounded exponentially." *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 627 (3d. Cir. 1996), *aff'd sub nom. Amchem Prods. v. Windsor*, 521 U.S. 591 (1997).

## VI. CERTIFICATION OF A "LIABILITY ONLY" CLASS WITH DAMAGES TO BE HEARD BY SEPARATE JURIES WOULD BE UNCONSTITUTIONAL.

The Poynters' desire for a class action limited to liability alone is improper. (Doc. 58-1 at 23-24). This is an obvious and unsound gambit to dodge full application of Rule 23(b)(3)'s predominance and superiority limitations on damages class actions. A class cannot be certified for purposes of liability alone "to circumvent the predominance requirement of Rule 23(b)(3)." *Taylor v. CSX Transp., Inc.*, 264 F.R.D. 281, 296 (N.D. Ohio 2007), and it would violate the Seventh Amendment for Ocwen's liability to be determined by one jury and damages, by another. *See Gasoline Prods. v. Champlin Refining*, 283 U.S. 494, 499–500 (1931); *Blyden v. Mancusi*, 186 F.3d 252, 268 (2nd Cir. 1999); *Castano v. Am. Tobacco*, 84 F.3d 734, 751 (5th Cir. 1996); *Matter of Rhone-Poulenc Rorer*, 51 F.3d 1293, 1303 (7th Cir. 1995); *Alabama v. Blue Bird Body*, 573 F.2d 309, 318 (5th Cir. 1978). The Seventh Amendment is not affected by the certification of the case as a class action or the fact that a liability determination has been bifurcated from damages. 28 U.S.C. § 2072(b); Fed. R. Civ. P. 38(a); Fed. R. Civ. P. 42(b); *Ross v. Bernhard*, 396 U.S. 531, 538–42 (1970); *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 508 (1959); *Rhone-Poulenc*, 51

---

[20] *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015 (7th Cir. 2002).

F.3d at 1303–04. *Accord Reeb v. Ohio Dep't of Rehab. And Corr.*, 81 F. App'x 550, 554 n.6 (6th Cir. 2003) (vacating class certification and remanding to district court with instructions "that, should the district court certify plaintiffs' pattern-or-practice claim as a hybrid class action …, it must ensure that the class action complies with the Seventh Amendment.").

Where, as here, damages issues depend in whole or in part on the same issues of fact that inform issues of liability, the Seventh Amendment does not allow damages and liability to be tried to separate juries over a defendant's objection. *Bacon v. Honda of Am. Mfg., Inc.*, 205 F.R.D. 466, 488-89 (S.D. Ohio 2001), *aff'd*, 370 F.3d 565 (6th Cir. 2004); *Mason v. Granholm*, No. 05-cv-73943, 2007 WL 2541769, at *3-4 (E.D. Mich. Aug. 31, 2007); *see also Armstrong v. Whirlpool Corp.*, No. 03-cv-1250, 2007 WL 676694, at *14-15 & n.5 (M.D. Tenn. Mar. 1, 2007) (denying class certification, and rejecting plaintiff's request to bifurcate liability issues from relief-related issues because that "likely would raise serious Seventh Amendment concerns.").

## CONCLUSION

For at least the foregoing reasons, the Poynters' motion for class certification should be denied in all respects.

Respectfully submitted,

/s/ Edmund S. Sauer
Edmund S. Sauer
BRADLEY ARANT BOULT CUMMINGS LLP
Roundabout Plaza
1600 Division Street, Suite 700
Nashville, TN 37203
Telephone:     (615) 244-2582
Facsimile:     (615) 252-6380
esauer@babc.com

Christopher M. Hill
Christopher M. Hill & Associates
641 Teton Trail
Frankfort, KY 40601
Telephone:     (502) 226-6100
Facsimile:     (502) 223-0700
chrish@hillslaw.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on December 28, 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System which will send an electronic notification of such filing to all counsel of record in the Court's ECF filing system.

/s/ Edmund S. Sauer
OF COUNSEL