UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
(*Electronically Filed*)

==========================================X

DEAN A. POYNTER and LOIS M.
POYNTER, individually, and as the
representatives of a class of similarly-
situated persons,

CIVIL ACTION NO.:
3:13-CV-00773-JGH-CHL

Plaintiff(s),

-against-

OCWEN LOAN SERVICING LLC., *et al.*,

Defendant(s),

==========================================X

## PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION

**AND NOW COMES** the Plaintiffs, DEAN A. POYNTER and LOIS M. POYNTER (hereinafter the "Poynters"), individually and as the representatives of a class of similarly-situated persons, by counsel, that in support of their PLAINTIFFS' MOTION FOR CLASS CERTIFICATION (hereinafter the Poynters' "Motion") pursuant to Federal Rules of Civil Procedure (hereinafter "FRCP") Rules 23(a) and (b)(3), and as and for a Reply Memorandum to Defendant OCWEN LOAN SERVICING LLC. (hereinafter "Ocwen")'s OCWEN LOAN SERVICING, LLC'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION (hereinafter Ocwen's "Response") respectfully state as follows:

### I. INTRODUCTION

This Honorable Court should grant the Poynters' Motion for class certification, the objections contained in Ocwen's Response notwithstanding. Ocwen's Response amounts to

nothing more than a fourth attempt at dismissing the class action allegations made pursuant to the Fair Debt Collections Practices Act, 15 U.S.C. §§ 1692 *et seq*. (hereinafter the "FDCPA") contained in the Poynters' FIRST AMENDED CLASS ACTION COMPLAINT (hereinafter the Poynters' "Amended Complaint") shrouded in a smokescreen of obfuscation.

Ocwen's objections are of no import here. (1) The Poynters have offered evidence that Ocwen's violations are systemic; (2) Any consent given by the Poynters to Ocwen was revoked; (3) The Poynters' counsel are capable of handling this action; (4) The proposed class is easily ascertainable; (5) Determining class membership is always an individualized inquiry; (6) A class action would be the superior method to adjudicate this controversy; and (7) Rule 23(c)(4) expressly authorizes this kind of certification and the Rule is not unconstitutional.

If this Court was to follow Ocwen's characterization of Rule 23 to its logical conclusion, *certification of any class pursuant to it would be impossible*! If that notion was not untenable enough on its own, the fact that the FDCPA *explicitly provides for statutory class action damages* catapults the arguments made in Ocwen's Response into the stratosphere of incredulity. This Court should not allow Ocwen to lead it down the garden path. Rather, it should grant the Poynters' Motion for class certification in accordance with the precepts of Rule 23 and the case law thereunder.

## II. STANDARD

The Poynters' proposed nationwide class satisfies the requirements of Rule 23, and should be certified. Although the standard that this Court should employ in deciding the Poynters' Motion was already comprehensively delineated in the Poynters' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION (hereinafter the Poynters' "Memo"), in light of the arguments raised in Ocwen's Response, there are some points

that warrant clarification. Compare (Pls.' Mem. Law Support Mot. Class Cert. 3-7, ECF No. 58-1) with (Def.'s Opp. to Pls.' Mot. Class Cert., ECF No. 59).

Despite Ocwen's assertions to the contrary, the analysis to be undertaken by this Court when adjudicating the Poynters' Motion "turns on whether [the Poynters] have shown, for purposes of Rule 23[], that they ***can prove-not that [they] have already shown***-that all members of the class have suffered the 'same injury.'" Rikos v. Proctor & Gamble Co., 799 F.3d 497, 505 (6th Cir. 2015) (italics removed, emphasis added) (quoting Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011)). In other words, the inquiry for class certification purposes is whether or not the Poynters have shown "that there is a common question that will yield a common answer for the class (***to be resolved at the merits stage***), and that that common answer relates to the actual theory of liability in the case." Ibid. (parenthesis in original, emphasis added).

Therefore, since the Poynters allege "a single course of wrongful conduct" the state of affairs is "particularly well-suited to class certification" since there is "an increasingly insistent need to certify class actions for lawsuits arising out of a single course of conduct." Young v. Nationwide Mut. Ins. Co., 693 F.3d 532, 545 (6th Cir. 2012) (internal quotation marks, citations and parentheses omitted). As detailed at length in the Poynters' Memo, their theory for class certification approaches Ocwen's unitary course of conduct (contacting represented consumers directly, despite actual knowledge of the representation) from two angles. First, there is the allegation and evidence showing that Ocwen had a policy and procedure of requiring third-party authorizations from consumers before it would cease contacting them directly. See, e.g., (Pls.' Mem. 16). Second, in an avenue that Ocwen *does not address at all* in its Response, class certification can be premised on Ocwen's systemic failure to incorporate a mechanism like Exhibit T into its policies and procedures until now, which could have avoided years of direct contact with

represented consumers. See id. at 16 n.12; (Pls.' Ex. T, ECF No. 58-6). Each depiction of Ocwen's unitary course of conduct is sufficient to warrant class certification in its own right; here the Poynters proffer them in tandem, militating strongly in favor of certification. The Poynters' Motion for class certification should be granted.

## III. ARGUMENT

In light of Ocwen's objection regarding the scope of the proposed class, the class definition should be slightly narrowed to reflect the precise violations that Ocwen has perpetrated, and refined accordingly:

> All persons[1] who, without consenting prior, directly received the substantial equivalent of any of the following: (1) account statement[2], (2) mortgage account statement[3], (3) notice of delinquency[4], (4) notice of default[5] and/or (5) any telephone communication demanding payment from the Defendant Ocwen, a debt collector as defined by the FDCPA[6], despite the fact that Ocwen had actual knowledge that the class members were represented by an attorney(s) with regard to the subject debt and further Ocwen had knowledge of, or could readily ascertain, such attorney(s) name(s) and address(es), and the attorney(s) did not fail to respond within a reasonable period of time to the communication from Ocwen, within the applicable statutory limitations period, including the period following the filing date of this action;

Excluded from the nationwide class are: (1) Ocwen, Ocwen's parents, subsidiaries, affiliates, officers, directors, assigns and successors, and any entity in which Ocwen has a controlling

---

[1] The term "persons" as used in this class definition includes only those individuals who satisfy the definition of "consumer" as defined by the Fair Debt Collection Practices Act § 803 (3), 15 U.S.C. § 1692a (3) (1994).

[2] Examples of this document include: (Pls.' Ex. U, ECF No. 58-7); (Pls.' Ex. V, ECF No. 58-8); (Pls.' Ex. X, ECF No. 58-10); (Pls.' Ex. AA, ECF No. 58-13); (Pls.' Ex. FF, ECF No. 58-18); (Pls.' Ex. GG, ECF No. 58-19); (Pls.' Ex. HH, ECF No. 58-20); (Pls.' Ex. II, ECF No. 58-21); (Pls.' Ex. MM, ECF No. 58-25); and (Pls.' Ex. NN, ECF No. 58-26).

[3] Examples of this document include: (Pls.' Ex. Z, ECF No. 58-12); (Pls.' Ex. KK, ECF No. 58-23); and (Pls.' Ex. LL, ECF No. 58-24).

[4] Examples of this document include: (Pls.' Ex. W, ECF No. 58-9); (Pls.' Ex. Y, ECF No. 58-11); (Pls.' Ex. BB, ECF No. 58-14); and (Pls.' Ex. CC, ECF No. 58-15).

[5] Examples of this document include: (Pls.' Ex. DD, ECF No. 58-16); (Pls.' Ex. EE, ECF No. 58-17); and (Pls.' Ex. JJ, ECF No. 58-22).

[6] Since Ocwen Loan Servicing, LLC would only be a "debt collector" for those debts that it "either acquired [] in default or has treated [] as if [they] were in default at the time of acquisition", the class is necessarily limited to consumers who would satisfy those definitions. Bridge v. Ocwen Fed. Bank, F.S.B., 681 F.3d 355, 362 (6th Cir. 2012).

interest; and (2) the Judge and Magistrate Judge assigned to this case and any member of their immediate families. For the reasons explained below, Ocwen does not make a single objection that would prevent this Court from certifying the nationwide class, so this Court should so order.

### A. There is More Than Sufficient Evidence to Merit Certification

The crux of Ocwen's Response is embodied in its first two objections, which dovetail into one another. In an attempt to explain away the vicarious party admission contained in its Response to the Poynters' Motion to Amend, Ocwen has concocted a brand new theory; for the first time in this litigation, Ocwen has taken the position that the Poynters consented to Ocwen's direct contact when the Modification Agreement was entered in 2011. Not only is that brand new defense completely meritless, but it is impossible to reconcile with positions that Ocwen has taken elsewhere.

#### i. The Poynters revoked any consent given to Ocwen

In what amounts to a fourth bite of the proverbial apple, Ocwen now asserts that the Poynters have consented to its oppressive dunning all along. It is noteworthy that this defense was not raised – or for that matter even mentioned – in Ocwen's Response to the Poynters' Motion to Amend (attempt # 1), its remanded Motion to Partially Dismiss Amended Complaint (attempt # 2) or its most recent Joint Motion to Dismiss (attempt # 3). Nevertheless, Ocwen's latest and last defense is devoid of merit like all the rest, so the Poynters' Motion for class certification should proceed undeterred.

In its Response, Ocwen cites to a portion of the Modification Agreement, wherein the parties agreed that notices should be sent to the Poynters at their home address. See (Def.'s Opp. to Pls.' Mot. Class Cert. 13-14, ECF No. 59). Then, Ocwen equated the designation of where notices should be sent in the Modification Agreement with consent to essentially unlimited

dunning pursuant to Section 805(a) of the FDCPA. See ibid. Let us assume for the sake of argument that the Poynters consented to the direct communications from Ocwen in the Modification Agreement. Ocwen was still prohibited from contacting the Poynters directly because it is undisputed that the Poynters' attorney and agent, Teddy B. Gordon, transmitted multiple "cease and desist" *letters* to Ocwen (hereinafter the "QWRs"), directing that all future correspondence flow through him. See, e.g., (Pls.' Ex. B, ECF No. 26-2); (Pls.' Ex. C, ECF No. 26-3). Ergo, any consent given by the Poynters in the Modification Agreement was subsequently revoked by their attorney in writing, and Ocwen's consent defense serves as no impediment for the requisite finding of typicality; this Court should certify the nationwide class.

The starting point of the analysis is the language of the relevant subsections of the FDCPA. "When interpreting the FDCPA, we begin with the language of the statute itself, since the intent of Congress is best determined by the statutory language it chooses." Schroyer v. Frankel, 197 F.3d 1170, 1174 (6th Cir. 1999) (internal citations and quotation marks omitted). Section 805 of the FDCPA delineates the way in which consent for direct communication can be given and taken away by consumers:

> **(a) Communication with the consumer generally**
> Without the prior consent of the consumer given directly to the debt collector… a debt collector may not communicate with a consumer in connection with the collection of any debt
> ….
> (c) CEASING COMMUNICATION. ***If a consumer notifies a debt collector in writing that… the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt***…

15 U.S.C. § 1692c (a), (c) (bold in original, emphasis added). So, in other words, even express consent given to a debt collector can be revoked, as long as it is in writing.

That understanding comports with both the statutory language of the FDCPA and the

concept of consent as it existed at common law. "[W]here Congress uses terms that have accumulated settled meaning under… the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meanings of these terms." Neder v. United States, 527 U.S. 1, 21 (1999). And of course, "at common law, consent may be withdrawn… '[c]onsent is terminated when the actor knows or has reason to know that the other is no longer willing for him to continue the particular conduct.'" Gager v. Dell Fin. Serv., LLC, 727 F.3d 265, 271 (3rd Cir. 2013) (quoting Restatement (Second) of Torts § 892A, cmt. i (1979)).

The rule at common law certainly holds true for the FDCPA. See, e.g., id. at 270 (Noting that prior express consent given under Section 805 of the FDCPA can be revoked in writing); Osorio v. State Farm Bank, F.S.B., 746 F.3d 1242, 1254-55 (11th Cir. 2014) (same). There is no dispute that the Poynters' attorney transmitted the QWRs to Ocwen. It is obvious that the QWRs satisfy the FDCPA's requirement that revocation of consent be made in writing, and it is equally obvious that Attorney Gordon did so as the Poynters' agent. Therefore, the Poynters revoked any prior consent to direct contact from Ocwen through their agent, and all of Ocwen's subsequent dunning is violative of the FDCPA.

"The relationship between client and attorney… is a quintessential principal-agent relationship." Comm'r of Internal Revenue v. Banks, 543 U.S. 426, 436 (2005) (citing Restatement (Second) of Agency § 1 cmt. e (1957)). That well-settled principle holds true in the Commonwealth of Kentucky, where the "'relation of attorney and client embodies all the essential elements of principal and agent.'" In re Cook, 457 F.3d 561, 566 (6th Cir. 2006) (quoting Herfurth v. Horine, 98 S.W.2d 21, 23 (Ky. App. 1936)); see also Kindred Nursing Ctrs. Ltd. P'ship v. Leffew, 398 S.W.3d 463, 468-69 (Ky. App. 2013) ("Any person who is sui juris and has capacity to affect his or her legal relationships by giving consent to a delegable act or transaction may authorize an agent

to act for him or her… the principal is bound by the acts of the agent within the apparent scope of the authority conferred by him...").

As a logical corollary to the attorney-client agency relationship, "'[a] notification given by an agent is effective as notification given by the principal if the agent has actual or apparent authority to give the notification'… Thus… ***a notification given by an attorney (the agent) is effective as notification given by the client (the principal)***." In re A'Hearn, Nos. 041912 IWNBC, 11-00615 at *3 (Bankr. N.D. Iowa Apr. 19, 2012) (Casemaker) (emphasis added) (quoting Restatement (Third) of Agency § 5.02(2) (2006)); see also Abbott Labs. v. McLaren Gen. Hosp., 919 F.2d 49, 53 (6th Cir. 1990) (holding that a principal's contractually required notice was validly given by its agent). This is so because "[w]hen a lawyer represents a client, his acts become his client's acts, his knowledge the client's knowledge." Lampe v. Kash, 735 F.3d 942, 944 (6th Cir. 2013). Thus, given the fact that Attorney Gordon notified Ocwen in writing that any prior consent to directly communicate with his clients was thereafter revoked, Ocwen's consent argument falls apart.

That understanding comports with the single, readily distinguishable case that Ocwen cites in support of its position. (Def.'s Opp. 14) (citing Backlund v. Messerli & Kramer, P.A., 964 F. Supp. 2d 1010, 1012-13 (D. Minn. 2013)[7]). In that case, just like in this one, the purported consent contained in the subject agreement "could not be altered except in writing." Backlund, 964 F. Supp. 2d at 1016. However, the consumer in that case only "*orally* informed [the debt collector] of [its] representation [by counsel]." (Def.'s Opp., 14) (italics in original) (citing Id. at 1012-13). As explained above, this case is materially different because the QWRs were made in writing.

---

[7] Additionally, in that case, the court held that any telephone communications that the debt collector made to the consumer directly were not subject to the contract terms regarding notice. See Backlund, 964 F. Supp. 2d at 1014-15. The same holds true here. See proposed class definition *supra* p. 5.

Accord Gager, 727 F.3d at 274 ("The fact that [the consumer] entered into a contractual relationship[8] with [the debt collector] did not exempt [it] from the [] requirements [of Federal law]… [the consumer] retained the right to revoke her prior express consent.").

The Poynters relied on their attorney to put a stop to Ocwen's incessant harassment. Mr. Gordon's "cease and desist" letter is an exemplary notice given by an attorney as agent on behalf of his principal client, and is a perfectly acceptable revocation of consent under the FDCPA. If it were otherwise, consumers like the Poynters "would be penalized for attempting to protect themselves by obtaining counsel. Surely, such practical consequences fail to comport with principles of fairness, the FDCPA's 'broadly worded prohibitions on debt collector misconduct,' and the Act's expansive and overarching purpose." Polinsky v. Cmty. Health Partners Reg'l Health Sys., 858 F. Supp. 2d 891, 898 (N.D. Ohio 2012) (quoting Harvey v. Great Seneca Fin. Corp., 453 F.3d 324, 329 (6th Cir. 2006)). Regardless of whether or not the Poynters consented to Ocwen's direct contact, they effectively revoked any prior consent in writing through their agent, Mr. Gordon, when he directed that all correspondence flow through him by way of the QWRs. Ocwen's new theory of consent is no defense to the Poynters' FDCPA claims, and accordingly does absolutely nothing to diminish the Poynters' typicality with the other nationwide class members. The Poynters' Motion to certify the nationwide class should be granted.

    ii.    **<u>Ocwen's explanation for its admission is a post hoc explanation of counsel</u>**

Not only does Ocwen's consent defense fail as a matter of law, but it is materially contradicted by positions that Ocwen has taken elsewhere in this litigation. Ocwen admonishes the

---

[8] Additionally, Ocwen cannot hold the Poynters to their end of the Modification Agreement because it was the first to materially breach it. See, e.g., Hall v. Rowe, 439 S.W.3d 183, 186 (Ky. App. 2014) ("Kentucky case law adheres to the 'fundamental principle in the law of contracts that before one may obtain the benefits the contract confers upon him, he himself must perform the obligation which is imposed upon him.'") (quoting W. Ky. Coal Co. v. Nourse, 320 S.W.2d 311, 314 (Ky. App. 1959)).

Poynters for using ellipses in their Memo. Concurrently with Ocwen's chastisement it conveniently omits a significant portion of the quoted material. The entirety of Ocwen's admission reads, in pertinent part, as follows:

> The Poynters direct this Court's attention to three [letters]… sent by Attorney Gordon wherein he advised Ocwen that he was legal counsel for the Poynters… ***According to the Poynters, this method of communication/notification was sufficient, as it was "just like during the negotiation of the Modification Agreement," wherein in the servicer was made aware that the Poynters were represented by counsel.*** Underscoring this point, Attorney Gordon's above-identified communications repeatedly reference the Kentucky Jefferson Circuit Court Civil Action No. 08-CI-07294 as the source of Ocwen's alleged knowledge of his legal representation of the Poynters.
> ***It is implausible to contend that referring back to a five (5) year old civil case would operate as a confirmation to the servicer that the consumer was currently represented by an attorney***, particularly in this age where consumer personally identifying information is being chronically stolen. ***Rather, the prudent method of approaching the matter was to ascertain the accuracy of the information by means of seeking, from the borrowers, a third party authorization permitting disclosure of their information. As a result of exercising a precautionary duty, Ocwen apprised the Poynters that Attorney Gordon was not authorized to receive information on their loan; and, that it would require a third-party authorization from the Poynters. As a result, Ocwen's representatives did not have any "actual" knowledge of any legal representation and the only means by which to reasonably validate same was by way of a third-party authorization.***

(Def.'s Resp. to Pls.' Mot. to Amend Compl. 3-5, ECF No. 13) (emphasis added, internal citation omitted) (hereinafter Ocwen's "Admission"). Ocwen's most recent explanation for its Admission is that it was always cognizant of the Modification Agreement and its terms, and therefore refused to direct its communications to the Poynters' attorney in order to comply with the notice provision of the Modification Agreement. See (Def.'s Opp. 14). That position is squarely contradicted by what Ocwen said in its Admission. Ocwen has taken the position that referring to, *inter alia*, the Modification Agreement was insufficient confirmation that Mr. Gordon represented the Poynters; Ocwen argued that it would be "implausible to contend that referring back to a five (5) year old civil case would operate as a confirmation to [Ocwen] that the consumer was currently represented

-10-

by an attorney… [r]ather, the prudent method of approaching the matter was to ascertain the accuracy of the information by means of seeking, from the borrowers, a third party authorization permitting disclosure of their information." (Def.'s Resp. 4).

The Admission that the Poynters are exploiting here is Ocwen's position that it did not do anything wrong by sending the Poynters a third party authorization before it would direct all communications to their attorney. As Ocwen communicated to the Poynters on March 15, 2013:

> Concern: We are in the receipt a correspondence from Teddy B. Gordon *(__Attorney at Law__)*, who expressed concern regarding the late charges and lender placed insurance assessed on the above loan. We were requested to respond to the quires outlined in the correspondence. Response: ***Our records indicate that Teddy B. Gordon (Attorney at Law) is not authorized to receive any information on the above-referenced loan number. Please note that in order for us to authorize Teddy B. Gordon (Attorney at Law), it is requested that you provide us with a written authorization.***

(Pls.' Ex. C, ECF No. 26-3) (emphasis added). To put it a different way, if Ocwen was doing the right thing (following its internal policies and procedures) by requiring a third party authorization from the Poynters before it would direct all of its correspondence to Mr. Gordon, and the reason for doing that (as admitted in Ocwen's Admission) was in order to ascertain whether or not Mr. Gordon actually represented the Poynters, then Ocwen would necessarily do the same thing for any other represented consumer, irrespective of the servicing history regarding that individual consumer's mortgage. See, e.g., (Pls.' Ex. C); (Def.'s Resp. 3-5). Ocwen never said that this was a one-off mistake, but that it was "exercising a precautionary duty". (Def.'s Resp. 4).

Ocwen can chant its mantra that the Poynters' case is an "exception to the norm" as much as it wants, but it produces neither evidence nor argument as to why the way it treated the Poynters was anything other than routine. (Def.'s Opp. 1). Therefore, Ocwen admitted by necessary

implication that it required third party authorizations from represented consumers before it would stop dunning them as a matter of course.[9] The Poynters' nationwide class should be certified.

### iii. Ocwen confuses individual inquiry with administrative feasibility

Ocwen devotes significant ink to explaining how every class member will have to produce individual evidence in order to establish those class members' memberships in the class. Ocwen contends that this state of affairs precludes certification. See (Def.'s Opp. 22-34). But if Ocwen's argument were followed to its logical conclusion, *it would be impossible to certify any class*! Undoubtedly, the class action defense bar would wholeheartedly support the wholesale impossibility of class certification, but such a notion is contrary to the law. "There will always be some level of [individualized] inquiry required to verify that a person is a member of a class… [certainly it is not the case] that no level of [individualized] inquiry as to the identity of class members can ever be undertaken. If that were the case, no Rule 23(b)(3) class could ever be certified." Rikos v. Proctor & Gamble Co., 799 F.3d 497, 526 n.10 (6th Cir. 2015) (internal citation and quotation marks omitted).[10]

The twelve pages containing Ocwen's arguments of that ilk do not demonstrate the necessity for individualized inquiry, but rather merely implicate the principle of administrative feasibility. As enunciated by the Sixth Circuit:

---

[9] A final piece of evidence produced by the Poynters that undermines Ocwen's explanation for its Admission is Exhibit T. The Poynters have never completed and/or transmitted a third-party authorization to Ocwen, yet Exhibit T was transmitted directly to the Poynters' attorney; Ocwen should have been doing that all along. (Pls.' Ex. T).

[10] That axiomatic principle can be demonstrated by considering two of the elements of the Poynters' FDCPA claim that Ocwen contends cannot be established through common evidence: that the class only includes "consumers" and that Ocwen is a "debt collector" as to those class members. (Def.'s Opp. 25-7, 30-2). Those two elements are elements of *every* FDCPA claim! See, e.g., 15 U.S.C. §§ 1692a (3), (6). Therefore, if Ocwen's characterization of FRCP 23 held true, *an FDCPA class action would be impossible*! That notion is at odds with the provision of the FDCPA that explicitly provides for class action damages and, of course, the jurisprudence on FDCPA class actions itself. See, e.g., id. at § 1692k (a)(2)(B) ("in the case of a class action…"); Carroll v. United Compucred Collections, Inc., 399 F.3d 620 (6th Cir. 2005) (affirming certification of consumer FDCPA class); Sykes v. Mel S. Harris & Assoc's, LLC, 780 F.3d 70 (2nd Cir. 2015) (same).

> For a class to be sufficiently defined, the court must be able to resolve the question of whether class members are included or excluded from the class ***by reference to objective criteria.*** In some circumstances, a reference to damages or injuries caused by particular wrongful actions taken by the defendants will be sufficiently objective criterion for proper inclusion in a class definition.

Young v. Nationwide Mut. Ins. Co., 693 F.3d 532, 538 (6th Cir. 2012) (emphasis added). Ocwen's lamentation regarding the requisite individual inquiries that will have to be undertaken in order to determine which of its customers are members of the class is beside the point.

> [T]he need to manually review files is not dispositive. If it were, defendants against whom claims of wrongful conduct have been made could escape class-wide review due solely to the size of their businesses or the manner in which their business records were maintained… It is often the case that class action litigation grows out of systemic failures of administration, policy application, or records management that result in small monetary losses to large numbers of people. To allow that same systemic failure to defeat class certification would undermine the very purpose of class action remedies.

Id. at 540. The proposed class definition, *supra*, pp. 4-5 is constructed with sufficiently objective criteria that it will be administratively feasible to determine who is a member, and that is all that Rule 23 requires. The Poynters' Motion should be granted.

### B. The Remainder of Ocwen's Objections to Certification Are Meritless

The Poynters' counsel will adequately represent the class.[11] Ocwen has taken the position that the undersigned is not capable of representing the nationwide class because they failed to include "firm resumes" as an exhibit to the Poynters' Motion. (Def.'s Opp. 16). The undersigned is not applying for employment with this Court, but for appointment as class counsel. Rule 23(g) is essentially a codification of the case law for the standards for the appointment of class counsel. The factors that this Court should consider include:

---

[11] It is the rule that "only when attacks on the credibility of the representative party are so sharp as to jeopardize the interests of the absent class members should such attacks render a putative class representative inadequate". Vassalle v. Midland Funding LLC, 708 F.3d 747, 757 (6th Cir. 2013) (brackets omitted, emphasis added). See also Almendares v. Palmer, 222 F.R.D. 324, 332 (N.D. Ohio 2004) ("Arguments challenging the adequacy of class representatives should be viewed skeptically.") (emphasis added).

(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class; (B) [the Court] may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class…

Fed. R. Civ. P. 23 (g)(1)(A)-(B). Most, if not every one of those factors support the appointment of the undersigned as class counsel. See also Resume for Mr. Gordon, attached hereto as Exhibit OO.[12]

Further, there is no conflict of interest for the undersigned. Counsel for the Poynters are no more "necessary witness(es)" for the Poynters than counsel for Ocwen is a necessary witness for it going forward. See, e.g., KBA, Ethics Op. 048 (1971) ("probably more importantly, ***the testimony of the [attorney] does not appear to be absolutely essential to the prospective client's case***") (emphasis added). The possible testimony Ocwen discusses will not be even remotely relevant to the class's case, because the FDCPA is a "strict liability statute", and as such, all of the elements[13] of the class members' Section 805 claim can be established based solely upon Ocwen's own records. Fed. Home Loan Mtg. Corp. v. Lamar, 503 F.3d 504, 513 (6th Cir. 2007). As such, the undersigned will adequately represent the nationwide class.

Finally,[14] a class action would be the superior[15] method for adjudicating the controversy.

---

[12] There are two additional attorneys currently working on this matter. If this Court requires additional Resumes, they would be happy to provide them.

[13] A violation of the FDCPA § 805 is established if the class members can prove that: "(1) [they were] represented by an attorney with respect to the debt, (2) [Ocwen] knew [that they were] represented by an attorney with respect to the debt, (3) [Ocwen] communicated with [them], and (4) [Ocwen] was not authorized to communicate with [them], either by consent or by a court." Montgomery v. Shermeta, Adams & Von Allmen, P.C., 885 F.Supp.2d 849, 854-55 (W.D. Mich. 2012).

[14] Ocwen also curiously challenges the bifurcation of liability and damages expressly allowed by Rule 23(c)(4). No one said anything about separate juries trying the instant case. It is black letter law that "a class may be certified for liability purposes only, leaving individual damages calculations to subsequent proceedings." In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig., 722 F.3d 838, 860-61 (6th Cir. 2013). Barring an intervening change in the law from the Sixth Circuit or the Supreme Court of the United States, Ocwen's argument is squarely contradicted by binding precedent.

[15] The availability of statutory damages and attorney's fees under the FDCPA does not make the class action device inferior for the matter sub judice. Where, as here, the nationwide class is "simply seeking economic damages rather

Certifying the nationwide class will not avoid the requirement of conducting discovery. After certification, the parties will need to coordinate with the Court in order to "facilitate the orderly and cost-effective acquisition of relevant information and materials and the prompt resolution of discovery disputes." Manual for Complex Litigation § 11.42 (4th Ed. 2004). After discovery, which will require manual review of files, and the class members are identified, the Poynters will proceed to notify the class members of the action, as required by Rule 23(b)(3).

## IV. CONCLUSION

Ocwen has failed to adduce a single objection that precludes this Court from certifying the nationwide class. The proposed nationwide class satisfies the requirements of Rule 23 as to numerosity, commonality, typicality and adequacy. Additionally, common issues predominate over individual ones and a class action would be the superior method for adjudicating the controversy. This Honorable Court should certify the nationwide class so Ocwen can be called to task for its widespread violation of the law.

Dated: January 14, 2016                                                              Respectfully submitted,

*/s/ Peter J. Jannace*                                                              */s/ (by PJJ with consent)*
PETER J. JANNACE                                                                    TEDDY B. GORDON
*Attorney for Plaintiffs*                                                            *Attorney for Plaintiffs*
807 West Market Street                                                              807 West Market Street
Louisville, KY 40202                                                                Louisville, KY 40202
(646) 783-9810                                                                      (502) 585-3534
(502) 585-3539                                                                      (502) 585-3539
peter.jannace@gmail.com                                                             tbearaty@aol.com

---

than redress of physical injuries, class members have a diminished interest in individual litigation for the simple reason that the class members can always opt out of the class and pursue their own suits if they feel they can obtain greater damages on their own." Ham v. Swift Transp. Co., 275 F.R.D. 475, 488 (W.D. Tenn. 2011).

**CERTIFICATE OF SERVICE**

       It is hereby certified that on the 14th day of January, 2016, a true and correct copy of the foregoing was electronically filed by using the CM/ECF system, which will generate copies to all counsel of record (no pro se parties). It is hereby further certified that the undersigned is unaware of any non-CM/ECF participants. Filing via CM/ECF will send a notification of electronic filing to the following: Hon. Edmund S. Sauer, BRADLEY ARANT BOULT CUMMINGS LLP, Roundabout Plaza, 1600 Division Street, Suite 700 Nashville, TN 37203 and Hon. Christopher M. Hill, Christopher M. Hill & Associates, P.S.C., 641 Teton Trail Frankfort, Kentucky 40601.

                                      */s/ Peter J. Jannace*
                                      COUNSEL FOR PLAINTIFFS