UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

DEAN A. POYNTER and LOIS M.
POYNTER,                                                                                          Plaintiffs,

v.                                                                         Civil Action No. 3:13-cv-773-DJH-CHL

OCWEN LOAN SERVICING, LLC, et al.,                                                    Defendants.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Plaintiffs Dean and Lois Poynter have sued various defendants over the way their 2004 home loan was serviced. Most of their claims are asserted in their individual capacities; two of their claims are brought on behalf of themselves and putative classes. Before the Court are various motions to dismiss, a motion to strike the plaintiffs' jury demand, and a motion for class certification. After careful consideration, the Court will dismiss several claims, order more definite statements with respect to two claims, and hold a hearing on the jury demand and class certification issues.

### I.     BACKGROUND

Dean and Lois Poynter took out an $89,900 loan on their home in July 2004. (*See* D.N. 26-7) Wells Fargo now holds the note; Ocwen Loan Servicing, LLC (Ocwen Loan) is the loan servicer. (D.N. 44-1, PageID # 493) Defendant Ocwen Mortgage Servicing, Inc. (Ocwen Mortgage) was added to the complaint because it is Ocwen's parent company. (D.N. 26, PageID # 274) Plaintiffs allege that Defendant Ocwen Financial Corporation (Ocwen Financial) acquired HomeEq Servicing in 2010, thereby becoming the successor in servicing all of the mortgages previously serviced by HomeEq (including the Poynters'). (*Id.*)

1

In 2011, the Poynters and the defendants entered into a loan modification agreement. (*Id.*, PageID # 275) That agreement reduced the Poynters' interest rate, monthly payments, and principal balance with the intent of reinstating their debt as current and not in default. (*See* D.N. 38-2) The Poynters allege that they stayed current on their payments after signing the 2011 modification agreement. (D.N. 26, PageID # 275) They further assert that Ocwen Loan accepted those payments. (*Id.*, PageID # 276)

The Poynters allege that despite their compliance with the 2011 loan modification agreement, the defendants committed a litany of transgressions, including falsely claiming that the payments were not made or were made late; charging the Poynters unnecessary fees; communicating with the Poynters "hundreds" of times "at all hours of the day and night" even though the defendants knew the Poynters were represented by counsel; and failing to respond to letters sent by the Poynters' counsel. (*Id.*, PageID # 276-77)

In all, the Poynters assert twelve causes of action, most of which are brought on an individual basis. Two claims, however, are asserted on behalf of putative classes of similarly situated borrowers. Count One is brought on behalf of a putative nationwide class. (D.N. 26, PageID # 280, 283-86) Count Two is brought on behalf of a putative statewide class. (D.N. 26, PageID # 280, 286-89)

There are now several motions pending before the Court: a motion to strike the plaintiffs' jury demand (D.N. 38), a motion to dismiss the claims against Ocwen Financial for lack of personal jurisdiction (D.N. 39), a motion to dismiss the claims against Ocwen Mortgage for failure to state a claim upon which relief can be granted (D.N. 43), a motion to dismiss the claims against Ocwen Loan and Wells Fargo for failure to state a claim upon which relief can be

granted (D.N. 44),[1] a motion for class certification (D.N. 58), and a motion for hearing on all other pending motions (D.N. 64).

## II.   STANDARDS

*12(b)(2) Dismissal*

Defendants may request dismissal for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). Plaintiffs bear the burden of establishing that the Court has personal jurisdiction over the defendants. *Brunner v. Hampson*, 441 F.3d 457, 462 (6th Cir. 2006). When a motion to dismiss for lack of personal jurisdiction is based only on the pleadings and affidavits—as opposed to one based on limited discovery or an evidentiary hearing—the plaintiff's burden is "relatively slight." *Estate of Thompson v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 360 (6th Cir. 2008). But that burden becomes more difficult when "the plaintiff has received all of the discovery it sought with respect to personal jurisdiction and there does not appear to be any real dispute over the facts relating to the jurisdiction." *Int'l Techs. Consultants, Inc. v. Euroglas S.A.*, 107 F.3d 386, 391 (6th Cir. 1997). And when the defendant properly supports a motion for dismissal, "the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).

*12(b)(6) Dismissal*

Defendants may seek dismissal under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." On such a motion, the Court will accept all of the plaintiff's

---

[1] Ocwen Financial and Ocwen Mortgage filed separate motions requesting dismissal. They both requested, however, that—if the Court ruled against them on their separate motions—the Court join them with the substantive arguments that Ocwen Loan and Wells Fargo raised in briefing on their joint motion to dismiss (D.N. 44). (*See* D.N. 39-1, PageID # 451 n.1; D.N. 43-1, PageID # 479 n.1)

"factual allegations as true and construe the complaint in the light most favorable to the [p]laintiffs." *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). Those allegations must allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677. The complaint need not contain "detailed factual allegations," *Twombly*, 550 U.S. at 555, but it must have "more than an un-adorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 677. Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555).

### III. DISCUSSION

After careful consideration, the Court concludes that most of the Poynters' claims must be dismissed. For those causes of action, the Court determines that the applicable laws preclude recovery. Thus, those causes of action fail to state claims upon which relief can be granted. Some claims will survive; two require more definite statements. As for the ancillary motions to dismiss, the Court will grant both Ocwen Mortgage's and Ocwen Financial's motions to dismiss. Finally, the Court concludes that the interests of justice would be best served by hearing argument on the motions to strike the plaintiff's jury demand and to certify a class. The Court will discuss each motion in turn.

**1. Ocwen Mortgage's Motion to Dismiss**

Ocwen Mortgage asks the Court to dismiss the claims against it because the complaint fails to allege that Ocwen Mortgage engaged in any wrongful conduct. (D.N. 43-1, PageID # 479) Ocwen Mortgage also protests that it is a "foreign corporation with no pleaded causal

4

connection to the Plaintiffs' injuries or claims." (*Id.*)  The plaintiffs disputed those arguments in a terse and unhelpful response.  (*See* D.N. 52, PageID # 1025 ("If the Poynters' Amended Complaint did not contain any allegations against Ocwen, then there would be no need for Ocwen to file the instant Motion to Dismiss, as there would be nothing to dismiss!"))

Upon review of the complaint and the briefings, the Court agrees with Ocwen Mortgage.  Plaintiffs rarely refer to Ocwen Mortgage in the complaint.  (*See* D.N. 26)  And the one time that it is substantively mentioned is when the plaintiffs allege that they added Ocwen Mortgage to this lawsuit because Ocwen Mortgage was named as the parent company of Ocwen Loan.  (*Id.*, PageID # 274)  "It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries."  *United States v. Bestfoods*, 524 U.S. 51, 61 (1998).  Given the paucity of information in the complaint relating to Ocwen Mortgage, and in light of the plaintiffs' admission that Ocwen Mortgage was added merely because it is the parent corporation of Ocwen Loan, the Court concludes that all claims against Ocwen Mortgage must be dismissed because the Poynters have failed to show that they are plausibly entitled to relief from that entity.

2. **Ocwen Financial's Motion to Dismiss**

Ocwen Financial argues that the claims against it should be dismissed because the Court lacks personal jurisdiction over it.  (D.N. 39)  The plaintiffs concede that Ocwen Financial is not subject to general personal jurisdiction.  (*See* D.N. 51, PageID # 768)  They maintain, however, that Ocwen Financial is subject to specific jurisdiction.  (*Id.*)  The Court disagrees.

Specific jurisdiction requires a showing that the lawsuit at issue "arises out of or relates to the defendant's contacts with the forum."  *Daimler A.G. v. Bauman*, 134 S. Ct. 746, 754 (2014).  In briefing, the plaintiffs repeatedly refer to the "continual" and "systematic" contacts of

Ocwen Financial with the Commonwealth of Kentucky (*e.g.*, D.N. 51, PageID # 776), even though concepts like "continual and systematic contacts" are the province of general jurisdiction. *See, e.g.*, *Goodyear Dunlop Tires, S.A. v. Brown*, 564 U.S. 915 (2011). The question is whether Ocwen Financial's contacts with Kentucky gave rise to these claims. *See id*. at 919. The plaintiffs have failed to establish that the answer to that question is yes.

The complaint attempts to bring Ocwen Financial within its ambit by alleging that Ocwen Financial focuses its business on residential loan servicing. (*See* D.N. 26, PageID # 273-74) Yet when Ocwen Financial submitted its motion, it attached the affidavit of Howard Handville, senior loan analyst at Ocwen Financial, who swore that "Ocwen Financial does not engage in any mortgage loan servicing activities, nor is it directly involved in the receipt or processing of loan payments or assessment of charges for payment processing." (D.N. 39-2) Instead, he stated, Ocwen Financial is merely a holding company that directly and indirectly owns shares in other entities (like Ocwen Mortgage and Ocwen Loan, respectively). (*Id*.) In their response, the plaintiffs do not refute this statement, instead arguing principles torn from general jurisdiction. (*See* D.N. 51, PageID # 766 ("Considering the relatively slight burden that the Poynters have to shoulder on the one hand, and the extent of Ocwen's contacts with the forum on the other hand . . . .")) Because the plaintiffs have not come forth with more than their pleadings to disprove Ocwen Financial's "properly supported motion for dismissal," *Theunissen*, 935 F.2d at 1458, the Court will dismiss their claims against Ocwen Financial for lack of personal jurisdiction.

   3. **Ocwen Loan and Wells Fargo's Joint Motion to Dismiss**

Ocwen Loan and Wells Fargo also jointly moved to dismiss the entire complaint. (D.N. 44) For the reasons that follow, the Court will dismiss most of the plaintiffs' claims against these defendants.

*Fair Debt Collection Practices Act Claims*

Two of the Poynters' claims relate to the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq*. Count One, which is asserted individually and collectively, alleges that Ocwen Loan, acting as a debt collector, violated §§ 1692b(6) and 1692c(a)(2) when it continued to contact the Poynters—and members of a class of similarly situated individuals—after Ocwen Loan had "actual knowledge" that the Poynters were represented by counsel with respect to the debt Ocwen Loan serviced. (D.N. 26, PageID # 285-86) Count Six claims that Ocwen Loan violated §§ 1692e and 1692f by making false or deceptive representations to the Poynters about their home loan debt and trying to collect unauthorized fees and charges on that debt. (*Id.*, PageID # 293-94)

The term "debt collector" has a particular meaning in the FDCPA. To have standing under the Act, plaintiffs must establish that their legal adversaries qualify as debt collectors. *See CGM, LLC v. BellSouth Telecomm., Inc.*, 664 F.3d 46, 52 (4th Cir. 2011). "Debt collector" differs from "creditor," and the distinction depends "on the default status of the debt at the time it was acquired." *Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 359 (6th Cir. 2012). A non-originating entity that acquires a debt is considered a debt collector if the debt was in default when the entity acquired it; a non-originating entity is considered a creditor if the debt was not in default when acquired. *See id*. n.3 (citation omitted). And "[t]he same is true of a loan servicer, which can either stand in the shoes of a creditor or become a debt collector, depending on whether the debt was assigned for servicing before the default or alleged default occurred." *Id*. (citation omitted).

Here, Ocwen Loan attacks Counts One and Six of the complaint in two ways. First, Ocwen Loan questions the sufficiency of the Poynters' allegations. That is, Ocwen Loan

complains that the Poynters made bare legal conclusions without sufficient supporting factual detail. (*See* D.N. 44-1, PageID # 496) Ocwen Loan claims that the Poynters concluded in their complaint that Ocwen Loan was a debt collector without giving the Court sufficient factual detail to plausibly reach the same conclusion. (*Id*.) The Court disagrees. The complaint alleges that "[a]s the servicer of a loan determined to be in default prior to the assumption of the rights to service the loan, OCWEN is a third party debt collector under the FDCPA." (D.N. 26, PageID # 276) This allegation is preceded by facts supporting it: "The payment history shows that OCWEN began servicing the Poynters' loan after the lender . . . had determined that the Poynters' loan was in default," and "OCWEN has treated the Poynters as if they were in default from the beginning of its relationship with the Poynters." (*Id.*, PageID # 275) This is sufficient to satisfy the pleading standards. *See Twombly*, 550 U.S. at 555 (plaintiffs need not adorn their complaint with "detailed factual allegations").

Next, Ocwen Loan argues that, even if the defendants *were* debt collectors[2] at some point in the past, they would have lost their debt-collector status in 2011 when the parties signed the modification agreement. (*Id*., PageID # 497-98) As support for this contention, Ocwen Loan submits *Bailey v. Security National Servicing Corp.*, 154 F.3d 384 (7th Cir. 1998), in which the Seventh Circuit ruled that a change in circumstances, such as the signing of a forbearance agreement, could strip an entity seeking to collect on a defaulted debt of its debt-collector status. *See id.* at 387-88.

---

[2] Though it may appear obvious, it should be noted—and the defendants do so note—that an entity can be a debt collector in one case and a creditor in another. And an entity's status can, at various times based on changing circumstances, alternate between creditor and debt collector. Whether an entity is a debt collector is a factual inquiry that must be made on a case-by-case basis.

8

Several factors distinguish this case from *Bailey*. Most importantly, the forbearance agreement in *Bailey* was entered into *before* the loan servicers began servicing the loan. *See id*. And so the debtor was not in default under the forbearance agreement when the new loan servicers came onto the scene. Years after *Bailey*, that distinction led the Northern District of Illinois to reject an argument from Ocwen Loan—similar to the argument it makes here—that it was not a debt collector. *See Gritters v. Ocwen Loan Serv., LLC*, No. 14-c-00916, 2014 WL 7451682, at *4-5 (N.D. Ill. Dec. 31, 2014). That court's decision turned on Ocwen Loan's acquisition of the servicing rights to the Gritters loan after the debtor had defaulted and Ocwen Loan's continued treatment of the Gritters account as being in default. *See id*. at *5.

Here, the Poynters were already in default when Ocwen Loan became the loan servicer. (D.N. 49, PageID # 542) The parties did, however, enter into the 2011 modification agreement. (*Id*.) The Poynters contend that the modification agreement did not "change Ocwen [Loan]'s status as a debt collector" because it did not extinguish the defaulted debt. (*Id*., PageID # 543-44) At this stage of the proceedings, the Court is inclined to agree. As in *Gritters*, where the Northern District of Illinois made sure to note that Ocwen Loan had continued to treat the debt account "as if it were in default," 2014 WL 7451682, at *5, the plaintiffs have made factual allegations that, taken as true, indicate similar treatment. Not only did Ocwen Loan acquire the loan after it was in default, the Poynters also allege that they were subjected to harassing calls—behavior the Court assumes is more likely to occur when a loan is in default. (D.N. 26, PageID # 276-77) The Court finds the *Gritters* reasoning to be persuasive and concludes that Ocwen Loan's alleged actions resembled those of a debt collector. Therefore, the Poynters' FDCPA claims may proceed.

9

*Kentucky Consumer Protection Act Claims*

In Counts Two and Seven, the plaintiffs allege that the defendants violated the Kentucky Consumer Protection Act. *See* Ky. Rev. Stat. § 360.100, *et seq.* Specifically, Count Two alleges—on behalf of the plaintiffs individually and a putative statewide class—that the defendants violated KRS § 360.100 when they charged late fees in excess of the five percent statutory limit on "high-cost homes." (D.N. 26, PageID # 286-89) Count Seven accuses Ocwen of violating KRS § 367.320 by misapplying the Poynters' payments and assessing improper charges against them. (*Id.*, PageID # 294-95) Neither claim can survive the motion to dismiss.

The state statute defines "high-cost home loan" as a loan for which the "total points and fees payable by the borrower at or before the loan closing exceed the greater of" $3,000 or six percent of the total loan amount. Ky. Rev. Stat. § 360.100(1)(a)(5) (2015). The Poynters closed on their home in 2004. (*See* D.N. 26-7) Unfortunately for them, the high-cost home loan provision did not exist until after they took out their loan, and the provision did not take effect until April 2008. *See* Kentucky House Bill 552 (HB 552) at 50-51 (Apr. 2008), *available at* http://www.lrc.ky.gov/record/08RS/HB522/bill.doc. In other words, the plaintiffs seek to apply a statutory amendment retroactively so that the closing costs they paid in 2004 would qualify their mortgage as a high-cost home loan under a 2008 state law. Under Kentucky law, "[n]o statute shall be construed to be retroactive, unless expressly so declared," Ky. Rev. Stat. § 446.080(3), especially when "new duties are created." *Commonwealth of Ky. Dep't of Agric. v. Vinson*, 30 S.W.3d 162, 168 (Ky. 2000). Because "Kentucky law prohibits the amended version of a statute from being applied retroactively to events which occurred prior to the effective date of the amendment," *id.*, the Poynters do not have a plausible legal claim under the KCPA for either Count Two or Count Seven.

10

*RESPA Claim*

The third count alleges that Ocwen Loan violated "the requirements of the mortgage servicer provisions of [the Real Estate Settlement Procedures Act] as set forth in 12 U.S.C. § 2605." (D.N. 26, PageID # 290-91) Part of RESPA, § 2605(e), requires loan servicers to either acknowledge or respond to "qualified written responses" (QWRs) within certain timeframes. But not all correspondence between borrowers and loan servicers counts: "To state a viable claim under Section 2605(e) . . . [plaintiffs must show that the] correspondence met the requirements of a QWR." *Williams v. Wells Fargo Bank, N.A.*, 560 F. App'x 223, 241 (5th Cir. 2014). QWR requirements are detailed in § 2605(e) and RESPA's Regulation X. Under those provisions, a loan servicer can "establish a separate and exclusive office and address for the receipt and handling of qualified written requests." 24 C.F.R. § 3500.21(e)(1) (2009). When a servicer provides notice of its RESPA address, either in a notice of transfer or separately through first-class mail, "then the borrower must deliver its request to that office in order for the inquiry to be a 'qualified written request.'" Real Estate Settlement Procedures Act, Section 6, Transfer of Servicing of Mortgage Loans (Regulation X), 59 Fed. Reg. 65,442, 65,446 (Dec. 19, 1994). RESPA claims grounded in correspondence sent to an address other than the designated QWR address are subject to dismissal. *See, e.g.*, *Roth v. CitiMortgage Inc.*, 756 F.3d 178, 182-83 (2d Cir. 2014). Here, the Poynters were given a designated QWR address but failed to use it.

On a motion to dismiss, any attachments to the pleadings are treated as part of the pleadings. Fed. R. Civ. P. 10(c). When there is a contradiction between the two, written instruments attached to the complaint trump the allegations in the complaint. *Williams v. CitiMortgage, Inc.*, 498 F. App'x 532, 536 (6th Cir. 2012). The first attachment to the Poynters' complaint is a RESPA notice of transfer from August 2010 informing the Poynters that Ocwen

11

Loan's designated QWR address was in Orlando, Florida. (D.N. 26-1, PageID # 303) And yet, when the Poynters' counsel sent what he intended to be QWRs, none of the four were correctly addressed: he sent two to Carol Stream, Illinois, and two to Springfield, Ohio. (*See* D.N. 26-2) Treating those attachments as part of the complaint, the Court concludes that the plaintiffs cannot seek relief under § 2605(e) because they did not properly send QWRs. Their RESPA claims will therefore be dismissed.

*Unjust Enrichment and Fraud Claims*

In their fifth claim, the Poynters allege that they were "made to pay the Defendants in excess of the amount owed under the terms of the note and mortgage and/or the modification agreement." (D.N. 26, PageID # 292) As a result, they allege, the defendants were "unjustly enriched" at the Poynters' expense. (*Id*., PageID # 293) Meanwhile, the eighth claim asserts that the defendants committed fraud by sending knowingly false statements regarding late payments with the intent to mislead the Poynters, and that the Poynters justifiably relied on those statements to their injury. (*Id*., PageID # 295-96) For reasons grounded in Kentucky contract law, each claim must be dismissed.

The unjust enrichment claim is not viable under Kentucky law. "The doctrine of unjust enrichment has no application" when an express agreement on the same subject matter exists between the parties. *Codell Constr. Co. v. Commonwealth*, 566 S.W.2d 161, 165 (Ky. Ct. App. 1978). The Sixth Circuit has upheld dismissals of unjust enrichment claims that were premised on the same facts that undergirded a breach of contract claim. *See, e.g.*, *Shane v. Bunzl Distribution USA, Inc.*, 200 F. App'x 396 (6th Cir. 2006). And other judges in this district have dismissed "fatally defective" unjust enrichment claims that simply "track[ed] an underlying

12

breach of contract claim." *Ham Broad. Co., Inc. v. Cumulus Media, Inc.*, No. 5:10-cv-00185-R, 2011 WL 1838911, at *6 (W.D. Ky. May 13, 2011).

Here, the Poynters allege that the defendants were unjustly enriched because the Poynters were made to pay amounts in excess of what they owed under their written agreements. The same factual allegations also help underpin their breach of contract claims: "The Defendants have charged unlawful and excessive fees to the Poynters in breach of the note and mortgage and/or the Modification Agreement." (D.N. 26, PageID # 292) Because this claim tracks part of their breach of contract claim—without more—it is "fatally defective" and must be dismissed. *Ham Broad. Co.*, 2011 WL 1838911, at *6.

Likewise, the fraud claim fails because it is tied up in the breach of contract claim. As with the unjust enrichment claim, the fraud claim is a simple recasting of elements of the breach of contract claim. (*Compare* D.N. 26, PageID # 291-92, *with id.*, PageID # 295-96) Kentucky law does not permit fraud claims that are "fundamentally interwoven with . . . breach of contract claims." *Biszantz v. Stephens Thoroughbreds, LLC*, No. 5:13-cv-348-REW, 2015 WL 574594, at *13 (E.D. Ky. Feb. 11, 2015). The reason is that Kentucky's economic loss rule "precludes a plaintiff from recovering under a fraud theory when the claim is intertwined with breach of contract claims." *Derby City Capital, LLC v. Trinity HR Serv.*, 949 F. Supp. 2d 712, 727 (W.D. Ky. 2013). Given that all "of [the Poynters'] claims emanate from the same set of facts and are essentially restatements of each other," *Biszantz*, 2015 WL 574594 at *13, the Court will dismiss the fraud claim because Kentucky's economic loss doctrine makes it legally implausible.

*Fair Credit Reporting Act Preemption*

The plaintiffs include three other torts in their complaint. Count Nine alleges intentional infliction of emotional distress caused by "[t]he loss of [the Poynters'] financial well-being and

good credit standing." (D.N. 26, PageID # 296)  Count Ten complains that the Poynters were defamed when Ocwen published false statements to credit reporting agencies. (*Id.*, PageID # 297)  And Count Eleven asserts that Ocwen invaded the Poynters' privacy by publishing false information to credit reporting agencies. (*Id.*, PageID # 297-98)  The defendants believe that each claim is preempted by the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.*; the plaintiffs dispute that any of them are.

"[T]he FCRA contains two overlapping and potentially contradictory preemption provisions, § 1681t(b)(1)(F) and § 1681h(e), which limit the circumstances under which [plaintiffs] may bring . . . state common law claims." *Stafford v. Cross Country Bank*, 262 F. Supp. 2d 776, 784-85 (W.D. Ky. 2003).  Courts have adopted three competing interpretations of how to reconcile these provisions: the "total preemption" approach, the "statutory" approach, and the "temporal" approach. *Eddins v. Cenlar FSB*, 964 F. Supp. 2d 843, 850 (W.D. Ky. 2013).  The litigants here each picked the approach that best serves them and claimed that this district had adopted one or the other.  They are both correct; judges of this district have used both the temporal and statutory approaches.  *Compare Eddins*, 964 F. Supp. 2d at 850-52 (Heyburn, J.) (applying temporal approach), *with Miller v. Wells Fargo & Co.*, No. 3:05-cv-42-S, 2008 WL 793676, at *8 (W.D. Ky. Mar. 24, 2008) (Simpson, J.) (applying statutory approach).

After careful review, the Court adopts the reasoning of *Stafford* and *Eddins* and concludes that the temporal approach is applicable.  The temporal approach

> divides FCRA claims against [credit information] furnishers into two distinct time frames: 1) after the furnisher received notice of the dispute[d information], § 1681t(b) preempts state law claims relating to the furnishing of disputed information; and 2) before the furnisher received notice of the dispute, § 1681h(e) provides that plaintiffs may bring defamation, invasion of privacy or negligence claims, so long as plaintiffs can establish the furnisher's malice or willful intent to injure.

*Eddins*, 964 F. Supp. 2d at 851. Because each of the three claims springs from Ocwen Loan's credit reporting, and because each relates to Ocwen Loan's obligations after it knew or had reason to know of the disputed information, the claims are preempted by the FCRA and cannot survive the motion to dismiss.

*Breach of Contract and Truth in Lending Act Claims*

Finally, the Court must consider Counts Four and Twelve of the complaint. Count Four alleges breach of contract. (D.N. 26, PageID # 291-92) Count Twelve asserts a violation of the Truth in Lending Act. (*Id.*, PageID # 298) Ocwen Loan seeks dismissal of these claims, or, in the alternative, a more definite statement. (D.N. 44-1, PageID # 511-12) It points to several problems in the pleading of the claims. For example, the breach of contract claim is asserted against all defendants, even though at least two of the defendants were parties to neither the note and mortgage nor the modification agreement. (*Id.*, PageID # 511) The Court agrees that Counts Four and Twelve are "so vague . . . that the [defendants] cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). Accordingly, these claims will not be dismissed; instead, the Court will order the plaintiffs to provide a more definite statement as to each.

## IV. CONCLUSION

For the reasons discussed above, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

(1) Ocwen Financial's motion to dismiss for lack of personal jurisdiction (D.N. 39) is **GRANTED**. Plaintiffs' claims against Ocwen Financial are **DISMISSED** without prejudice. The Clerk of the Court is **DIRECTED** to terminate Ocwen Financial Corporation as a defendant in this matter.

(2) Ocwen Mortgage's motion to dismiss for failure to state a claim (D.N. 43) is **GRANTED**. Plaintiffs' claims against Ocwen Mortgage are **DISMISSED** with prejudice. The Clerk of the Court is **DIRECTED** to terminate Ocwen Mortgage Servicing, Inc. as a defendant in this matter.

(3) Ocwen Loan and Wells Fargo's joint motion to dismiss (D.N. 44) is **GRANTED** in part and **DENIED** in part. Counts Two, Three, Five, Seven, Eight, Nine, Ten, and Eleven of the First Amended Complaint (D.N. 26) are **DISMISSED** with prejudice. Counts One and Six remain pending. Within **fourteen (14) days** of the date of entry of this Memorandum Opinion and Order, Plaintiffs shall file a more definite statement as to Counts Four and Twelve.

(4) The motion for hearing (D.N. 64) is **GRANTED** with respect to the motion to strike the jury demand (D.N. 38) and the motion to certify the putative nationwide class (D.N. 58). The Court will conduct a hearing on those motions on **November 21, 2016**, at **2:00 p.m.** at the Gene Snyder U.S. Courthouse in Louisville, Kentucky. To the extent the motion for hearing relates to the motions to dismiss (D.N. 39, 43, 44), it is **DENIED** as moot.

(5) The motions to strike jury demand (D.N. 38) and to certify a class (D.N. 58) are **ADMINISTRATIVELY REMANDED** pending the November 28 hearing.

September 22, 2016

**David J. Hale, Judge**
**United States District Court**